LORI KUWIK, Plaintiff-Appellant, v. STARMARK STAR MARKETING AND ADMINISTRATION, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—91—1251

Opinion filed July 27, 1992.

Maureen Flaherty, of Lehrer, Flaherty & Canavan, P.C., of Wheaton (R. Lawrence Canavan, of counsel), for appellant.

Joseph J. Hasman and Daniel A. Engel, both of Peterson, Ross, Schloerb & Seidel, of Chicago (Sherri L. Giffin, of counsel), for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Lori Kuwik, appeals from an order of the Du Page County circuit court granting summary judgment to defendants on a claim asserted against them which alleged the occurrence of libelous *per se* statements. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—1005.) Plaintiff claims that the trial court erred when it found that the libelous statements were protected by a qualified privilege and that no actual malice could be found as a matter of law. We reverse and remand.

Plaintiff is a doctor of chiropractic medicine. Defendants Starmark Star Marketing and Administration, Inc., Benefit Trust Life Insurance Company, E. Mitsis, individually, and Arthur J. Fischer, individually, are involved in the insurance industry.

On February 22, 1989, plaintiff examined a patient, Kathy Hammond. Hammond came to plaintiff complaining of a long history involving extreme fatigue, recurrent bronchitis, tonsilitis, lymphadenopathy, chronic sore throat, and premenstrual syndrome. Plaintiff performed a physical examination and evaluation of Hammond which led her to believe that Hammond suffered from *Candida* syndrome and chronic Epstein-Barr virus. To confirm her suspicions, plaintiff recommended a series of laboratory tests. These tests revealed the presence of *Candida* antibodies and Epstein-Barr antibodies.

Hammond forwarded her medical bills for the tests to Starmark, her medical insurance company. E. Mitsis, an employee and agent of Starmark, sent a letter to Hammond dated August 15, 1989, denying Hammond's claim for payment. In explanation of the claim denial, the letter stated that the services rendered by Dr. Kuwik were outside the scope of her license. In full, the letter stated the following:

"This letter is in response to a review on claims submitted from Fox Valley Health Services.

Our Medical Department has reviewed medical records and information relating to services rendered on March 6, 1989. It has been determined that based on the information on file, services rendered are 'outside the scope of the practicing physician's license', as stated under the definition of a physician in your policy. Therefore no benefits are payable for these services.

We wish our reply could have been more favorable. However, we must adhere to policy provisions.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that is [*sic*] you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 160 North La Salle Street, Chicago, IL 60606 and in Springfield at 320 West Washington Street, Springfield, IL 62767."

Hammond brought this letter to plaintiff. This letter prompted plaintiff to file a formal complaint with the Department of Insurance on September 23, 1989. Plaintiff's complaint alleges that the statements in the letter addressed to Hammond regarding the scope of plaintiff's practice are erroneous.

On October 23, 1989, Arthur Fischer, the vice-president, associate general counsel, and assistant secretary of Benefit Trust Life Insurance Company, responded to plaintiff's complaint in a letter addressed to Larry Barregarye at the Department of Insurance. This letter states in pertinent part:

"In order to respond to the comments of Dr. Lori Kuwik, I had this file reviewed by our medical director, Dr. Marvin Zolot. Dr. Zolot's position is that in order for a provider to order lab tests for a patient, the provider must first determine which test might be appropriate by doing a medical history in performing a physical examination.

In addition the provider must be trained in disciplines which teach the evaluation and treatment of the diseases which the tests may reveal. As our medical director has pointed out, an optometrist would not treat heart disease nor would a physical therapist do any evaluation or investigation into infectious diseases.

Tests for Epstein-Barr virus or Systemic Candidiasis testing is outside the scope and knowledge as well as the license of the provider in this case. However, our medical director has indicated that the company can provide $35 towards the Epstein-Barr Titer and $25 towards the Candida Titer tests for a total of $60 in benefits."

In connection with the denial of benefits to Hammond, Fischer received a document in 1989 from Starmark's medical director, Marvin Zolot, which stated:

"Our position is that in order for a provider to order laboratory tests, they must first determine which laboratory tests

might be appropriate by doing a history and performing a physical. In addition, the provider must be trained in disciplines which teach the evaluation and treatment of the disease which the tests may reveal. Optometrists do not treat heart disease; physical therapists do not dabble in infectious disease, et cetera. Epstein-Barr virus or systemic Candidiasis is outside the scope of the knowledge and indeed the scope of the license. (Toby is checking the wording of the Chiro license)."

Fischer explained that Toby was a paralegal for the company. Fischer understood that Dr. Zolot was saying that the tests ordered by plaintiff were outside the scope of practice of her license. Fischer testified that he did not remember receiving a report from Toby on the chiropractic license nor was there anything in the file in writing concerning the license of a chiropractor. Fischer did not recall whether he made reference to legal materials with respect to the licensing requirements of a physician after receiving the October 3, 1989, communication from Dr. Zolot.

Fischer testified that the representations made to the Department of Insurance were based upon the opinion of Dr. Zolot. Fischer did *not*, at that time, determine whether the laws of the State of Illinois conformed with Dr. Zolot's medical opinion. In connection with the present litigation, Fischer took the opportunity to review the statutes relative to the license of chiropractors in Illinois as they existed in August 1989 and determined that the statements made about plaintiff were, indeed, *not correct*. When Fischer was asked why he did not refer to the statutes in the State of Illinois prior to writing the letter of October 23, 1989, he stated that he did not know why.

Plaintiff identified the August 15, 1989, letter to Hammond from E. Mitsis and the October 23, 1989, letter to Barregarye from Fischer as the letters upon which the instant complaint is based.

Starmark's motion for summary judgment was based on its answer and affirmative defense that any communications to Hammond and to the Department of Insurance were qualifiedly privileged. The trial court granted summary judgment on the basis that there was no question of fact that the two letters were qualifiedly privileged and further held, as a matter of law, there was no issue as to any material fact which would allow plaintiff to prove actual or express malice to overcome the qualified privilege.

■ A summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. However, it is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt.

(*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Summary judgment is proper only when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and the moving party is entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Hagy v. McHenry County Conservation District* (1989), 190 Ill. App. 3d 833, 842.) The evidence in the record must be construed strongly against the movant and liberally in favor of the opponent. (*Tersavich v. First National Bank & Trust* (1991), 143 Ill. 2d 74, 80-81.) To prevent the entry of summary judgment, an opponent need not prove his case at this preliminary stage, but must present facts sufficient to support the elements of his claim. (*Kempes v. Dunlop Tire & Rubber Corp.* (1989), 192 Ill. App. 3d 209, 214.) "Here, then, our function is to determine whether the trial court correctly found that no genuine issue of material fact existed and also to determine whether judgment was correctly entered for the moving party as a matter of law." (*Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 241.) In our view, the trial court committed error in determining that there was no question of fact with respect to defendants' asserted privilege.

■ According to *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, a defendant may escape liability in a libel claim by affirmatively setting forth the elements necessary to establish that its communication was privileged. The essential elements are: (1) *good faith* on the defendant's behalf; (2) an interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties. (*Zeinfeld*, 41 Ill. 2d at 349.) Under the facts of this case, we determine that there is a question of fact whether defendants made their statements regarding plaintiff in good faith.

Ordinarily, the existence of a qualified privilege is a question of law for the court to decide. (*Skopp v. First Federal Savings* (1989), 189 Ill. App. 3d 440, 446.) Here, however, there is a factual question whether the statements about plaintiff were made in good faith. In our view, such a factual dispute is not a proper setting in which to grant summary judgment.

■ For example, in *Zeinfeld*, the trial court granted defendant's motion for summary judgment on the pleadings with regard to a count in libel. The complaint charged that information released by a former employer to a prospective employer was false and defamatory. Our supreme court reversed the judgment and remanded the case because triable issues of fact existed whether a conditional privilege was abused by an absence of good faith. (*Zeinfeld*, 41 Ill. 2d at 350.) Thus,

we conclude that, where matters of privilege are under consideration and where such matters involve factual disputes as to the existence of good faith, the existence of a qualified privilege is no longer a question of law but, instead, one of fact that lies within the province of the fact finder.

Defendants here were under a statutory obligation to provide a "reasonable and accurate explanation of the basis in the insurance policy or applicable law for [a claim] denial." (Ill. Rev. Stat. 1981, ch. 73, par. 766.6(n).) In our view, a failure to meet this duty would be indicative of a lack of good faith. Here, Fischer made representations about the scope of plaintiff's medical license and the breadth of plaintiff's knowledge without consulting the appropriate statutes or interviewing plaintiff herself. At the time the representations were made about plaintiff's scope of practice, the licensing statutes for physicians only limited chiropractors in their ability to write prescriptions or to perform surgery. (See Ill. Rev. Stat. 1987, ch. 111, par. 4400—1 *et seq.*) However, these statutes were not reviewed when the statements about plaintiff's scope of practice were made. In sum, there is significant evidence to support plaintiff's claim that defendants' sole basis for the disputed representations rested upon Dr. Zolot's personal opinions on the matter. We determine that it is a question of fact whether such reliance has a basis in good faith when statements are being made to the public and State agencies regarding an individual's professional and ethical character—particularly when it is suggested that the alleged professional incompetence may serve as a basis for a complaint with the consumer division of the Department of Insurance. Furthermore, the representations made about plaintiff assert that she acted outside of her scope of knowledge as well as her license. In our view, this statement may lack a good-faith basis if it was made with no information regarding plaintiff's individual training or the training of chiropractors in general.

Good faith, as a matter of law, does not exist if the basis of the good faith lacks a proper foundation in fact. The defendant need not necessarily make accurate statements, but should, at least, make an *attempt* at accuracy. If there is a sufficient dispute over whether a proper foundation did, indeed, exist, then the good-faith prong of the qualified privileged test cannot be resolved as a question of law by the trial court, but should, instead, be presented to the trier of fact. Since we cannot say that the good faith asserted by the defendants is clear and free from doubt, summary judgment for defendants is not proper.

Our holding in this regard necessarily moots the trial court's granting of summary judgment on the question of actual malice be-

cause actual malice is not a relevant concern until the qualified privilege has been found to apply. (*Edwards v. University of Chicago Hospitals & Clinics* (1985), 137 Ill. App. 3d 485, 491.) However, we note that our reasoning with respect to the previous issue applies with equal force here on the question whether actual malice existed as a matter of law. We observe that, taking the facts set forth by plaintiff as true, the question of actual malice cannot be resolved on summary judgment.

■ In order to withstand a motion to dismiss, plaintiff's pleadings must raise an inference that defendant acted with actual malice. (*Edwards*, 137 Ill. App. 3d at 490.) Actual malice means that defendant had knowledge of the falsity of his statement, lacked reasonable grounds for believing the truth of the statement, or acted with wanton disregard for the rights of others. (*Edwards*, 137 Ill. App. 3d at 490.) In our view, the alleged absence of a reasonable investigation on defendants' behalf gives rise to a question of fact regarding whether the statements were made with actual malice. In *Dark v. United States Fidelity & Guaranty Co.* (1988), 175 Ill. App. 3d 26, the finding of an absence of malice with respect to representations made by defendant was supported by substantial evidence provided by disinterested experts which defendants actively sought out and relied upon. No such evidence is presented here to indicate that a good-faith investigation was made prior to the release of the potentially harmful statements. In fact, as noted above, plaintiff's allegations that Fischer's damaging representations were made from a completely uninformed state of mind could be found by a jury to have been made with knowledge of their falsity, without reasonable grounds for believing their truth and with wanton disregard for plaintiff's rights.

For the above reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

UNVERZAGT and DOYLE, JJ., concur.