MELODY LARSON, Plaintiff-Appellant, v. DECATUR MEMORIAL HOS-
PITAL *et al.*, Defendants-Appellees.

Fourth District    No. 4—92—0319

Opinion filed October 29, 1992.

Gregory L. Barnes, of Gregory L. Barnes, Ltd., of Decatur, for appellant.

Ronald L. Lipinski and Elizabeth H. Skalitzky, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiff, Melody Larson, an employee of Decatur Memorial Hospital (DMH), brought a defamation action against DMH and James Scherer, a vice-president at DMH. Defendants filed a motion for summary judgment, alleging that Scherer's statements were protected against a defamation action by a qualified privilege because he made them during an internal investigation of the conduct of one of DMH's employees. The trial court granted the motion, and plaintiff appeals.

We affirm.

## I. BACKGROUND

On September 10, 1990, Linda Pieszala, assistant (and acting) director of personnel at DMH, told Scherer, the vice-president of nonclinical support services at DMH, that she had been informed of discussions involving DMH employees possibly using drugs in the engineering department of DMH. Scherer told Pieszala that she should obtain a signed statement from the employee she heard speaking before he would proceed with an investigation. Pieszala then did so, and the statement alleged that plaintiff, a secretary in

the engineering department, sold marijuana to fellow DMH employees and that her husband grew it in their basement at home. The statement also named four DMH employees who "frequently buy pot from Melody." Pieszala also informed Scherer that she believed the allegations were true. Scherer subsequently conducted an internal investigation of the allegations by interviewing plaintiff as well as the four DMH employees named in the statement. Everyone interviewed denied the allegations.

Scherer interviewed plaintiff on September 11, 1990, when he summoned her to his office. Larry Harris, supervisor in the engineering department, escorted plaintiff to Scherer's office. When they arrived, Pieszala was already present. Scherer informed plaintiff that he had reason to believe that she was selling and using marijuana on hospital premises and that the hospital had a good rehabilitation program which plaintiff should use to seek professional help. Scherer explained that DMH had a duty to investigate these allegations and to provide rehabilitation for its employees. Plaintiff immediately denied the allegations and volunteered to take a urine test (which ultimately came back negative for marijuana).

Disgruntled with the way Scherer handled the investigation, plaintiff filed a grievance with DMH on September 12, 1990. A few days later, Scherer again called plaintiff to his office, this time to discuss the results of her urinalysis. Michael Jontry, director of the DMH engineering department in which plaintiff worked, accompanied her to Scherer's office. Plaintiff brought a tape recorder to the meeting and told Scherer that in order to protect her interests, she would not proceed with the meeting unless she could record the conversations. Scherer refused to be recorded because the matter was "still [an] internal" concern. They said nothing further and the meeting ended.

On October 5, 1990, Scherer sent plaintiff a memorandum in response to her grievance, which stated that the investigation into plaintiff had been completed and no disciplinary action would be taken. Plaintiff has since retained her position with DMH, and no entry was made on her personnel file regarding the marijuana allegations or the subsequent investigation.

## II. PLEADINGS

In October 1990, plaintiff filed a four-count complaint against Scherer and DMH. Counts I and II accused Scherer and DMH, through its employee Scherer, of maliciously defaming plaintiff by publishing a knowingly false statement about plaintiff. Counts III

and IV accused Scherer and DMH, again through Scherer, of maliciously defaming plaintiff by publicizing a statement about her with reckless disregard for its truth.

### A. *Defamation*

■■ Plaintiff based her complaint of defamation on Scherer's statements to her in the presence of Pieszala and Harris. A statement is defamatory *per se*, allowing damages to be presumed, if it "impute[s] the commission of a criminal offense." (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 238, 552 N.E.2d 973, 982.) Scherer's statements to plaintiff in fact accuse her of selling and using marijuana, both criminal acts under Illinois law. (See Ill. Rev. Stat. 1989, ch. 56½, pars. 704, 705.) Further, because he made his statements in front of two other DMH employees, Scherer "published" them to someone other than plaintiff and himself. (*Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 500 N.E.2d 120.) Therefore, his statements are defamatory *per se* unless some privilege applies to them.

### B. *Defendants' Claim of Qualified Privilege*

■■ In December 1991, defendants moved for summary judgment on all counts, claiming that they acted within a qualified privilege when Scherer made the statements in question. An otherwise defamatory statement is not actionable if made under a qualified privilege. Statements made within a legitimate business context may be protected by a qualified privilege, including a statement made from employer to employee. (*Miller v. Danville Elks Lodge 332* (1991), 211 Ill. App. 3d 145, 153-54, 569 N.E.2d 1160, 1165; *Krasinski v. United Parcel Service, Inc.* (1988), 124 Ill. 2d 483, 490, 530 N.E.2d 468, 471.) A statement is conditionally privileged when the defendant makes it (1) in good faith; (2) with an interest or duty to be upheld; (3) limited in scope to that purpose; (4) on a proper occasion; and (5) published in a proper manner and only to proper parties. *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 349, 243 N.E.2d 217, 221.

Defendants base their claim of a qualified privilege on testimony contained in the depositions of plaintiff, Scherer, Pieszala, and Harris filed in support of their motion. Defendants claim that those depositions establish that Scherer made the statements in question as part of an internal investigation of drug sales and use of drugs on DMH premises.

## C. *Plaintiff's Response*

In response to defendants' motion for summary judgment, plaintiff primarily argued that Scherer lacked the requisite good faith for the privilege. In support of this argument, plaintiff presented a portion of Jontry's deposition in which he described the events when he accompanied plaintiff to Scherer's office. As previously noted, plaintiff left the office when Scherer would not permit her to record their conversation. Jontry remained behind, and Scherer asked him what kind of an employee plaintiff was. Jontry told Scherer that plaintiff was a good employee and did her job quite well. Plaintiff's counsel then asked the following questions and elicited the following answers from Jontry at his deposition:

"Q. [Counsel for plaintiff:] Did you believe that when he asked you about what type of employee that she was that he was searching for a reason to terminate her?

A. Yes.

Q. And why do you think that he was wanting to do that?

A. I have forgotten, obviously, some of the conversation that took place. It's been almost a year and a half now we've been into this, but that was a feeling I had at the time. He wanted some reason to get her out of here, out of the hospital.

Q. And this was a conversation that took place after she requested to tape the meeting?

A. Yes."

In March 1992, the trial court granted defendants' motion, finding no genuine issue of material fact present. Plaintiff argues on appeal that the court erred in doing so because a genuine issue of material fact exists regarding Scherer's good faith when making the statements in question to plaintiff. Alternatively, plaintiff contends that if defendants were acting within a qualified privilege, a genuine issue of material fact exists as to whether Scherer acted with malice when making the statements, so as to defeat defendants' claim of qualified privilege, and render erroneous the grant of summary judgment. *Miller*, 211 Ill. App. 3d at 154, 569 N.E.2d at 1166.

### III. SUMMARY JUDGMENT

#### A. *Summary Judgment in General*

Summary judgment is properly granted when the pleadings,

depositions, and the affidavits show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (*Kuwik v. Starmark Star Marketing & Administration, Inc.* (1992), 232 Ill. App. 3d 8, 12, 597 N.E.2d 251, 254.) On review, this court must determine *de novo* if the trial court correctly decided that no genuine issue of material fact exists. (*Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1992), 229 Ill. App. 3d 680, 683, 593 N.E.2d 1070, 1072; Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) Because a trial court does not have any discretion in deciding whether to grant a motion for summary judgment, we will not employ the abuse-of-discretion standard on review of the granting of that motion. *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272, 586 N.E.2d 1211, 1215; *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167.

When the party moving for summary judgment supplies facts in support of that motion that, if uncontradicted, would entitle that party to summary judgment as a matter of law, the opposing party cannot rely on the pleadings alone to raise issues of material fact. (*Kuwik*, 232 Ill. App. 3d at 12, 597 N.E.2d at 254 (to prevent entry of summary judgment, opposing party need not prove his case, but must present facts sufficient to support elements of his claim).) Although the evidentiary material a party submits in support of its motion for summary judgment should be construed against the movant and in favor of the opposing party (*Kuwik*, 232 Ill. App. 3d at 12, 597 N.E.2d at 254), the opposing party may not defeat an otherwise appropriate motion for summary judgment by merely arguing that the trier of fact might not believe a particular affiant or deponent. Because every party opposing a motion for summary judgment could make that argument, accepting it would effectively eliminate the possibility of summary judgment ever being granted.

■ In *Fitt v. City of Mattoon* (1991), 215 Ill. App. 3d 472, 483, 574 N.E.2d 1275, 1282, this court addressed the requirements of Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)) regarding the admissibility of evidence that parties put forth in opposition to motions for summary judgment and wrote the following:

"Rule 191(a) directs, in pertinent part, that affidavits in opposition to a motion for summary judgment shall be made on the personal knowledge of the affiant and shall affirmatively show the affiant, if sworn as a witness, can testify competently thereto. Supreme Court Rule 212(a)(4) provides discovery depositions taken under Rule 212 may be used for any

purpose for which an affidavit may be used. (134 Ill. 2d R. 212(a)(4).) Depositions used in support of or against a motion for summary judgment must comply with Rule 191."

The effect of our holding in *Fitt* is that all matters submitted by the parties—the "pleadings, depositions, *** admissions on file, *** [and] affidavits," referred to in section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c))—submitted by a party either in support of, or in opposition to, a motion for summary judgment must comply with Rule 191(a) in order to be considered. Thus, as this court explained in *Gardner v. Navistar International Transportation Corp.* (1991), 213 Ill. App. 3d 242, 247, 571 N.E.2d 1107, 1110, "[i]n determining the genuineness of a fact for summary judgment, a court should consider only facts admissible in evidence." Unsupported assertions, opinions, and self-serving or conclusory statements made in deposition testimony are not admissible evidence upon review of a summary judgment motion. *Reuben H. Donnelley Corp. v. Krasny Supply Co.* (1991), 227 Ill. App. 3d 414, 420-21, 592 N.E.2d 8, 12-13.

### B. *Summary Judgment on Defendants' Good Faith*

A court determines the existence of good faith by reviewing the statement itself, the circumstances surrounding the publication of the statement, and the relationship between the publisher and the recipients. (*Skopp v. First Federal Savings* (1989), 189 Ill. App. 3d 440, 447, 545 N.E.2d 356, 360.) The determination of whether a qualified privilege exists is a question of law. (*Skopp*, 189 Ill. App. 3d at 446, 545 N.E.2d at 360.) Plaintiff argues that the following facts demonstrate a lack of good faith by Scherer: (1) Jontry's statement that he "felt" Scherer was looking for "some reason" to fire plaintiff; (2) Scherer had no information to support the accusation that plaintiff used marijuana; (3) Scherer did not interview the employee who had made the accusations that implicated plaintiff; and (4) Scherer refused to allow plaintiff to tape record their second meeting. We conclude that none of these facts demonstrate any lack of good faith by Scherer so as to defeat his qualified privilege.

■ Plaintiff's argument primarily hinges upon Jontry's statement about his impressions of Scherer's inquiry about what sort of employee plaintiff was. However, Jontry's impression of Scherer's possible motive is nothing more than opinion or speculation and thus would be inadmissible at trial. Because of the inadmissibility of Jontry's impression, it fails to meet the requirements for a court to

consider it under Rule 191. See *Lackey & Lackey, P.C. v. Prior* (1992), 228 Ill. App. 3d 397, 399, 591 N.E.2d 998, 1000.

We also reject plaintiff's attack on Scherer's investigative methods as somehow demonstrating his lack of good faith. We find nothing inappropriate in either the scope of Scherer's investigation or the methods he employed. Those methods appropriately limited the spread of the allegations against plaintiff. We further are mindful that Scherer is not a trained investigator; we do not intend to adopt some unreasonable standard of investigation to gauge the behavior of employers who receive allegations like those in the present case, so that such employers are put in the dilemma of either conducting no investigation at all or conducting one which will be picked over and analyzed to see if—in hindsight—the employer could possibly have done it better.

Scherer acted within his capacity to review a potentially significant matter affecting personnel at DMH. Before proceeding with any investigation, he required all accusations to be put in writing. His subordinate (Pieszala) did so, as well as interviewing the employee who had made the allegations against Larson. Furthermore, the two people—Pieszala and Harris—who heard Scherer utter the statements in question were appropriate parties to this conversation because of their respective positions at DMH. At the time, Pieszala served as acting personnel director, and Harris served as supervisor of the engineering department in which plaintiff worked.

We also note that Scherer gave plaintiff an opportunity to rebut the charge by submitting to a urinalysis. Last, Scherer took no disciplinary action against plaintiff at the meeting where the statements were made or at any time since.

We reject as particularly without merit plaintiff's claim that Scherer's good faith must be doubted because he confronted plaintiff with an accusation that she had been both *selling* and *using* marijuana, when in fact all he had been informed of was that plaintiff had been *selling* marijuana. First, under the criminal law, selling marijuana is a more serious offense than mere use or possession. (Compare Ill. Rev. Stat. 1991, ch. 56½, par. 705, with Ill. Rev. Stat. 1991, ch. 56½, par. 704.) Second, it was entirely reasonable for Scherer to infer plaintiff's *use* of marijuana from her possession and sale of it because it is common knowledge that people who sell marijuana (1) frequently do so to help support their own habit of using it and other unlawful drugs, and (2) usually believe it to be a relatively harmless drug, thus suggesting that in addition to selling it, they are using it as well.

An employer should have the right to directly confront its employee with allegations of unlawful activity. (See *Fascian v. Bratz* (1981), 96 Ill. App. 3d 367, 369, 421 N.E.2d 409, 411.) We will not require employers to finesse their way around direct allegations of criminal activity when confronting such employees in order to avoid making a possibly defamatory statement.

Finally, Scherer's refusal to be recorded at the second meeting does not support any inference about Scherer's good faith. That refusal occurred *after* the statements in question were made, was appropriate at the time, and reveals nothing about Scherer's mental state when he made the statements in question. In sum, plaintiff has not presented any competent evidence to show that Scherer lacked good faith so as to rebut defendants' evidence that he was acting in good faith when he made the statements in question.

### C. *Summary Judgment on Showing of Malice*

■ To overcome a qualified privilege within an employee-employer context, plaintiff has to plead and prove that the defamatory statements were made with "actual malice," which is shown by either of the following: (1) defendant knew the statement was false, or (2) defendant made the statement with reckless disregard as to its truth. (*Miller*, 211 Ill. App. 3d at 154, 569 N.E.2d at 1166; *Krasinski*, 124 Ill. 2d at 490-91, 530 N.E.2d at 471.) A defendant acts with "reckless disregard" when he "publish[es] the defamatory matter despite a high degree of awareness of probable falsity or entertain[s] serious doubts as to its truth." (*Mittelman*, 135 Ill. 2d at 237-38, 552 N.E.2d at 981.) The focus is on the defendant's subjective state of mind when he made the statement, not the background investigation made by the defendant. If the defendant subjectively believed the statement was not false, actual malice does not exist. (*Miller*, 211 Ill. App. 3d at 155-56, 569 N.E.2d at 1167.) Thus, plaintiff must raise a genuine issue of material fact regarding Scherer's state of mind to rebut defendants' evidence that Scherer acted without malice or we will affirm the trial court's grant of summary judgment.

In attempting to meet this burden, plaintiff again asserts the four facts she claimed were evidence of a lack of good faith as showing that actual malice exists. As we explained earlier, however, Jontry's "feeling" about Scherer's possible motive is worthless due to its inadmissibility under Rule 191.

■ The primary focus remains on Scherer's state of mind when he made the statements in question. In his deposition, Scherer

stated that he suspected that plaintiff had used and sold marijuana when he made these statements. He further testified in his deposition that he neither knew the statement was false nor acted with reckless disregard when making it. Additionally, we note that Pieszala told Scherer that *she* believed the accusations to be true. Plaintiff has not provided any evidence to contradict defendants' evidence regarding Scherer's subjective state of mind. Thus, no genuine issue of material fact exists concerning malice, and the trial court correctly granted defendant's motion for summary judgment on the malice issue.

IV. CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

COOK and LUND, JJ., concur.