2025 IL App (1st) 231713-U

SIXTH DIVISION

February 28, 2025

No. 1-23-1713

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| EARNEST CALHOUN, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 20L5395 |
| CITY OF EVANSTON, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Maureen O. Hannon, |
| | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justice Gamrath concurred in the judgment.
Presiding Justice Tailor concurred in part and dissented in part.

**ORDER**

¶ 1   *Held:*   We affirm where the circuit court did not err when it granted summary judgment in favor of defendant based on its finding that defendant was immune from liability due to plaintiff's inability to prove actual or constructive notice of a defect in the roadway and failed to prove the defect was not *de minimis*.

¶ 2    Following a grant of summary judgment in favor of the City of Evanston ("the City"), appellant Earnest Calhoun contends the circuit court erred in finding: (1) the City owed him no duty; (2) the base of the crosswalk sign was *de minimis*; (3) the base of the crosswalk sign was open and obvious; and (4) the City was immune from liability under the Tort Immunity Act. For the foregoing reasons, we affirm.

¶ 3                                   BACKGROUND

¶ 4    On August 10, 2019, while riding his motorcycle, Earnest Calhoun struck the base of a crosswalk sign located in the middle of eastbound and westbound traffic on Emerson Street near Hartrey Avenue in Evanston, Illinois. Calhoun sustained a broken left leg, cuts, bruises, and an injury to his left wrist. The base of the crosswalk sign measured 8 inches by 8 inches and was approximately one and one-half inches tall.

¶ 5    On May 18, 2020, Calhoun filed a negligence complaint against the City. He alleged the City negligently maintained the premises, creating a defective and dangerous condition, and failed to warn or repair this condition where the City had actual or constructive notice that the sign had become detached from its base, causing him to crash and sustain bodily injuries.

¶ 6    Calhoun stated at his deposition that he was riding his motorcycle when he made contact with the base of a crosswalk sign that caused the crash. The motorcycle had fallen on Calhoun's left leg causing him to suffer a broken leg and injured wrist. He refused Emergency Medical Services after the Evanston Police Department arrived at the scene. Calhoun spoke to a responding police officer and explained the incident. He claimed that the police officer, Manuel Vasquez, said "the sign has been down, and the City should take care of it." After the incident, Calhoun drove to Northshore Evanston Hospital for medical treatment where he had surgery on his broken leg the next day.

¶ 7    Vasquez, the responding police officer, stated in his affidavit, "Mr. Calhoun and I did not have further discussions about the area or condition where the accident occurred, and I never told him anything regarding the City's knowledge or my knowledge of the condition of the crosswalk sign."

¶ 8    Thomas Twigg, the City's Traffic Operations Supervisor, stated in his affidavit, "the crosswalk sign and base are designed so that they can safely be driven over." Twigg further stated, "prior to plaintiff's accident on Saturday August 10, 2019, the City of Evanston did not have notice of the crosswalk sign being missing from the base at this location. The City of Evanston received a 311 report regarding this condition for the first time on Tuesday, August 13, 2019, and the City of Evanston replaced the crosswalk sign that same day."

¶ 9    Lloyd Sonenthal, an engineer retained by Calhoun, stated in his affidavit, "it is of my opinion the unexpected encountering of the black base mounted to the surface of Westbound Emerson at Hartrey, sticking up above the surface of the street a total of one and [one] half inches, was a City of Evanston-created bump which was capable of causing Earnest Calhoun to lose control of his motorcycle, and more probably than not, did cause him to lose control and was a proximate cause of his fall and injury." He also opined that the defect in the roadway was created by the City, not a result of environmental factors, and of sufficient height to cause Calhoun's loss of control.

¶ 10   The City filed a motion for summary judgment on March 22, 2022, and the court entered judgment in favor of the City on August 23, 2023. This appeal followed.

¶ 11                           JURISDICTION

¶ 12    The circuit court entered judgment in favor of the City on August 23, 2023. Calhoun filed a notice of appeal on September 15, 2023. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 303 (eff. July 1, 2017).

¶ 13                                    ANALYSIS

¶ 14    On appeal from the circuit court's grant of summary judgment in favor of the City in this negligence claim, Calhoun argues the court erred in finding: (1) the City owed him no duty; (2) the base and crosswalk sign was *de minimis*; (3) the base and crosswalk sign were open and obvious; and (4) the City was immune from liability under the Tort Immunity Act.

¶ 15    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31. When examining whether a genuine issue of material fact exists, a court construes the evidence in the light most favorable to the nonmoving party and strictly against the moving party. *Id*. We review the circuit court's grant of summary judgment *de novo*. *Williams v. Manchester*, 228 Ill.2d 404, 417 (2008).

¶ 16    Where a plaintiff seeks recovery based on defendant's alleged negligence, plaintiff must plead and prove the existence of a duty owed by defendant, a breach of that duty, and injury proximately resulting from that breach. *Bogenberger v. Pi Kappa Alpha Corp*, 2018 IL 120951 ¶ 21. A legal duty refers to a relationship between the defendant and plaintiff in which the law requires the defendant to act reasonably for the benefit of the plaintiff. *Quiroz v. Chicago Transit*

*Authority*, 2022 IL 127603, ¶ 13; *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22. Whether the defendant owes a duty to the plaintiff is a question of law for a court to decide. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995).

¶ 17    A municipality has a common-law duty to maintain its public property in a reasonably safe condition so that people using ordinary care are not injured. *Alave v. City of* Chicago, 2023 IL 128602, ¶38. This duty has been codified in Section 3-102(a) of the Tort Immunity Act which states, in relevant part:

> "A local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury less it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2018).

¶ 18    "The Illinois Supreme Court has noted that section 3-102(a)'s purpose is not to grant defenses and immunities but to codify, for the benefit of the intended and permitted users, the common law duty of a local public body to properly maintain its roads." *Perfetti v. Marion County*, 2013 Ill. App. (5th) 110489 ¶ 18, citing *Wagner v. City of Chicago*, 166 Ill. 2d 144 (1995).

¶ 19    Accordingly, under these circumstances, "the main inquiry is whether a notice gave city authorities sufficient information to enable them, by the exercise of reasonable intelligence and diligence, to locate the place of injury and ascertain conditions alleged to have existed which caused it." *Zameer v. City of Chicago*, 2013 Ill. App. (1st) 120198, ¶ 18.

¶ 20    Calhoun contends the City received actual or constructive notice because Vasquez told him at the time of the incident "the sign has been down, and the city should take care of it." During Calhoun's deposition, the following exchanged occurred between Calhoun and his counsel:

"Q. I have a few. After you were on the ground, did the police officers say anything about the sign being down?

A. Yeah. They were saying that the sign has been down, that the city should take care of it.

Q. So the officer told you that he knew the sign was down beforehand and they were supposed to take care of it?

MS. OZURUIGBO: Objection to --

BY MR. LANGENDORF:

Q. Is that what he said?

MS. OZURUIGBO: Objection to compound question.

You can still answer if you understand it.

BY THE WITNESS:

A. Could you repeat it for me one more time, sir?

Q. Did the officer tell you that the sign was down -- that he knew the sign was down before you fell?

A. Yes.

Q. Okay. And did he tell you that the City of Evanston was supposed to fix it but they didn't?"

A. Something of that nature, saying that they should have been fix -- Yeah.

¶ 21    Calhoun stated that "They were saying the sign has been down, that the City should take care of it." Calhoun's Counsel morphed the question into "did he tell you that the City of Evanston was supposed to fix it but they didn't?" and the dissent states that these were Calhoun's words when they were not. We find that even if Vasquez had said "the sign has been down, and the city should take care of it," it is insufficient to establish the City received actual notice because the defect related to the crosswalk sign was not reported to the City's 311 services department or

6

communicated to the City in some other way and the record does not support the contention that the City was otherwise notified of the defect. *Id*.

¶ 22    In *Zameer v. City of Chicago*, the circuit court correctly concluded that the City had not received actual notice, as the defect was never reported to the 311 services department or communicated to the City in any other way. *Id*. Because Twigg testified that the City was first alerted to the missing crosswalk sign through a 311 report on Tuesday, August 13, 2019, the record supports the contention that Calhoun's testimony, which was contradicted by the affidavit of Vasquez, is insufficient to establish the City had notice of the condition prior to Calhoun's injury. The alleged statement by Vasquez occurred after Calhoun's injury and could not have provided the City with a reasonably adequate amount of time before the injury to ascertain the conditions that were alleged to have existed. 745 ILCS 10/3-102(a) (West 2022).

¶ 23    Calhoun ultimately pleads the City had notice of the defect based on the alleged statement made to him by Vasquez. The record shows Calhoun lacked personal knowledge of the City's notice of the missing crosswalk sign, rather his knowledge was based on the alleged statement made by Vasquez with no additional evidence of the City having had notice or Vasquez telling anyone at the City that the sign was down. In *Schuster v. Occidental Fire and Casualty Company of North America*, 2015 Ill. App. (1st) 140718, the court found plaintiff's witness testimony was not based on personal knowledge of the facts, was unsupported, and could not be considered. *Id*.

¶ 24    Similar to *Schuster*, the assertion made by Calhoun regarding the alleged statement from Vasquez stands alone without corroborating evidence and is unsupported by the record. Thus, it is insufficient to rebut a motion for summary judgment. *Larson v. Decatur Memorial Hospital*, 236 Ill. App. 3d 796 (1992). In *Larson*, the court held:

7

"When the party moving for summary judgment supplies facts in support of the motion that, if uncontradicted, would entitle that party to summary judgment as a matter of law, the opposing party cannot rely on the pleadings alone to raise issues of material fact. . . Although the evidentiary material a party submits in support of its motion for summary judgment should be construed against the movant and in favor of the opposing party, the opposing party may not defeat an otherwise appropriate motion for summary judgment by merely arguing that the trier of fact might not believe a particular affiant or deponent. Because every party opposing a motion for summary judgment could make that argument, accepting it would effectively eliminate the possibility of summary judgment ever being granted." *Id*.

See also, *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004) (self-serving statement in affidavit was insufficient to raise a genuine issue of material fact as to the element of intent); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (self-serving affidavits are insufficient to withstand a motion for summary judgment); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (an affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate to satisfy the movant [or non-movant]'s burden); *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000) (plaintiff's vague statement was insufficient to create genuine issue of material fact).

¶ 25   In *Seitz-Partridge v. Loyola University of Chicago*, 2013 Ill. App. (1st) 113409, plaintiff presented evidence that she was falsely accused of plagiarism based on statements in her deposition that were self-serving, suggesting that her actions were unintentional. This court determined that her attempt to create a genuine issue of material fact based on her deposition testimony was unsupported by the record; consequently her argument must fail. *Id*.

¶ 26    We note that in *Purtill v. Hess*, Ill. 2d 229 (1986), our supreme court found the testimony of an expert witness, stating he was familiar with the minimum standards of medical practice, was sufficient to raise a genuine issue of fact and defeat the defendant's motion for summary judgment. The case *sub judice* is distinguishable from *Purtill* as the issue in *Purtill* centered on the sufficiency of the qualifications of an expert witness to testify regarding the applicable medical standards. The matter before the court here does not involve a dispute over the qualifications of an expert witness, rather the issue is whether Calhoun's claim regarding the alleged statement made by Vasquez is sufficient to establish a material issue of fact about whether the City had notice of the defective crosswalk sign. We find Vasquez's statement is insufficient to establish a material issue of fact because there is no other supporting evidence in the record like 311 calls or other discovery showing that the City had notice.

¶ 27    Vasquez stated in his affidavit that he does not normally patrol the area where Calhoun's accident occurred, and he did not state the City had notice of the missing crosswalk sign. The sworn statements of Vasquez, in addition to the fact that the City had received no 311 reports of the missing crosswalk sign until after Calhoun's injury, support the contention that the City did not have notice of the defect. If we were to find otherwise and accept Calhoun's argument that the City had notice because of the alleged statement made by Vasquez without any other corroborating evidence, bald contradictions of the evidence offered by the moving party in a motion for summary judgment would annul the use of summary judgment in every case. See *Larson*, 236 Ill. App. 3d 796 (1992).

¶ 28    Calhoun argues the City had constructive notice of the missing crosswalk sign. Constructive notice under section 3-102(a) of the Tort Immunity act is established where the condition has existed for such a length of time or is so conspicuous or plainly visible that the public entity should

have known of its existence by exercising reasonable care and diligence. *Siegel v. Village of Wilmette*, 324 Ill. App. 3d 903, 908, (2001). Calhoun provides no evidence and cites no authority in his brief to support his constructive notice argument. Similar to the case *sub judice*, in *Perfetti v. Marion County*, the court found the plaintiff did not provide evidence showing that Marion County had actual notice of the roadway's defective condition or that the defect was noticeable for a sufficient amount of time or so obvious that Marion County should have discovered it through reasonable care and diligence. *Perfetti v. Marion County*, 2013 IL App (5th) 110489 ¶ 21. As in *Perfetti*, Calhoun's failure to provide evidence of constructive notice or establish the City's knowledge of the defect undermines his claim.

¶ 29 Calhoun also argues the crosswalk sign base was not a *de minimis* road defect. We note that even if the City had actual or constructive notice of the defect, we would still affirm the circuit court's summary judgment order because the defect was *de minimis*.

¶ 30 "Municipalities do not have a duty to keep all sidewalks in perfect condition at all times." *Gillock v. City of Springfield*, 268 Ill. App. 3d 455, 457 (1994). The duty of a municipality is to keep its property in a reasonably safe condition, and it has no duty to repair *de mininis* defects. *Putman v. Village of Bensenville*, 337 Ill. App. 3d 197, 202 (2003). If municipalities were required to always keep streets and sidewalks in perfect condition, they would suffer an unreasonable economic burden. *Id*. at 202.

¶ 31 Whether a defect in the roadway is *de minimis* is determined by all the relevant facts, and there is no simple standard to separate *de minimis* defects from actionable ones. *St. Martin v. First Hospitality Group, Inc*., 2014 IL App (2d) 130505, ¶ 14. But it is well established pursuant to Illinois case law that absent any aggravating factors, a vertical displacement of less than two inches is *de minimis*. Thus, our supreme court has held that although a displacement of two inches in a

residential area is actionable, a variation of only one inch, absent more, is *de minimis*. *Warner v. City of Chicago*, 72 Ill. 2d 100, 104-05 (1978). In *Putman*, we held that a one inch displacement was de minimis. *Putman*, 337 Ill. App. 3d 197, 202. In *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 121, 124 (1993), the court found that a one and seven-eighth inch difference in the level of two concrete sidewalk slabs constituted a defect that was, as a matter of law, too minor to be actionable. See also *Morris v. Ingersoll Cutting Tool Co.*, 2013 Ill. App. (2d) 120760, ¶ 14 (affirming circuit court's grant of summary judgment to defendant based on its finding that the one and one-half-inch road defect in a loading bay that caused a truck driver to fall was *de minimis* and not actionable, reasoning that "[d]efendants' duty of care toward [plaintiff] was not to maintain their premises in perfect condition, but to avoid creating an unreasonable risk of harm").

¶ 32    Here, the base of the crosswalk sign was approximately one and one-half inches tall. We find it to be a minor defect that a person exercising ordinary care, whether walking or driving a motor vehicle, could have easily avoided. Thus, the circuit court did not err when it found the defect was *de minimis*.

¶ 33    This case involves a plaintiff operating a motorcycle, which of course is less stable than a four-wheeled vehicle and provides less protection in the event of a collision. The crosswalk sign was missing but its base remained affixed to the road. The sign base protruded above the roadway surface one and one-half inches. Motorists experience roadway imperfections of this size daily without injury. The sign base had beveled edges, which would act to soften the impact when a motorized vehicle crossed over it. A defect of this nature is not substantial enough to be actionable, whether walking or driving a motor vehicle.

¶ 34    Although Calhoun relies on Officer Vasquez's statement in his police report that he observed a "slightly raised metal object" to suggest that there may have been a metal pole sticking

out of the sign base to support his contention that "the condition was certainly not *de minimis*," Calhoun produced a photograph in discovery that he took of the roadway surface that only shows the sign base, not a pole. When asked if the photograph accurately depicted the road defect causing his accident, Calhoun answered affirmatively. Calhoun's expert also premised his opinions on the presence of the sign base, not a pole sticking out of the base. Accordingly, there is no competent evidence that a pole was present in the sign base at the time of Calhoun's accident, and we find the defect *de minimis*.

¶ 35    Calhoun also argues the missing crosswalk sign was not open and obvious. Because Calhoun cannot establish that the City had either actual or constructive notice of the defect pertaining to the crosswalk sign or that the defect was not *de minimis*, we need not address this argument. *Zameer v. City of Chicago*, 2013 IL APP (1st) 120198, ¶ 26.

¶ 36    For the foregoing reasons, the City cannot be liable for Calhoun's injury. Calhoun failed to prove the City had either actual or constructive notice and failed to show the defect was not *de minimis*.

¶ 37                              CONCLUSION

¶ 38    The circuit court did not err in concluding that Calhoun's self-serving testimony was insufficient to prove the City had actual or constructive notice of the missing crosswalk sign where there was no other corroborating evidence of notice to the city, and the court did not err in finding the defect *de minimis*. Liability for Calhoun's injury is precluded.

¶ 39    Affirmed.

¶ 40    PRESIDING JUSTICE TAILOR, concurring in part and dissenting in part:

¶ 41    I agree with the decision to affirm the circuit court's grant of summary judgment to the City. Like the majority, I would find the road defect to be *de minimis* and, therefore, not actionable.

However, I disagree with the majority's alternative rationale that the City did not have actual or constructive notice of the road defect and sufficient time to remedy it under Section 3-102(a) of the Tort Immunity Act. There is evidence that the City had notice, so it was not entitled to summary judgment on that basis. Accordingly, I concur in part and dissent in part.

¶ 42    On the notice issue, Officer Vasquez averred in his affidavit that he did not say anything to Calhoun at the scene about what he or the City knew about the road defect. However, Calhoun testified at his deposition that Officer Vasquez told him he knew the sign was down before the accident and the City was supposed to fix it but didn't, which is sufficient to create a genuine issue of material fact. The majority contends these are Calhoun's counsel's words, not Calhoun's. Not so. After objections by the City's counsel, Calhoun's counsel asked Calhoun if Officer Vasquez told him he knew the sign was down and the City was supposed to fix it but didn't. Calhoun answered in the affirmative, making it Calhoun's testimony. The majority cites no authority holding that an answer to a question in this manner in a deposition may not be considered when determining the existence of a genuine issue of material fact.

¶ 43    The majority then rejects Calhoun's testimony as self-serving. There are, as the majority points out, cases where courts have described party testimony as self-serving in affirming the grant of summary judgment against that party. Typically, those cases involve testimony that is conclusory, that is, without any factual basis. But Calhoun's testimony was not conclusory, and there is no basis for a court to disregard otherwise admissible party testimony merely because it is self-serving. As we asked rhetorically in *Solorzano v. Magnani*, 2024 IL App (1st) 221169, ¶ 37, "what party affiant does not provide self-serving evidence." If self-serving evidence is to be derided, then no party affidavit, deposition testimony or answer to interrogatory could ever be considered on summary judgment because each is, without fail, self-serving. See *Hill v.*

*Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. [Citation.] As we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.").

¶ 44    Moreover, Officer Vasquez's affidavit is belied by his deposition testimony. A fulsome review of Officer Vasquez's deposition testimony makes clear that his recollection is based simply on what he would normally say to a motorist when responding to a traffic accident, and when pressed he acknowledged that he didn't have a specific recollection of what he and Calhoun said to each other at the scene. And even if Officer Vasquez's deposition testimony aligned with his statement in his affidavit that he did not discuss what the City knew with Calhoun, Calhoun testified otherwise, leaving a genuine issue of material fact.

¶ 45    The City's reliance on the affidavit of Thomas Twigg, the Traffic Operations Supervisor in the City's Public Works Department, likewise does not withstand scrutiny. Twigg averred that the City did not have notice of the road defect before Calhoun's accident and that the first notice to the City was in a 311 report it received three days after the accident. However, when pressed Twigg admitted that the sole basis for his claim that the City lacked notice is that he didn't personally receive the 311 notice until three days after the accident. Twigg acknowledged that he had "no idea" whether any other City employee had notice of the road defect. Twigg acknowledged that he did not ask anyone at the City, that nothing prevented him from investigating further, and that he simply relied on the 311 report to determine the date of notice to the City. Further, Officer Vasquez admitted in his deposition that if he saw a broken crosswalk sign, he should notify the City to let them know it was broken so it could be repaired. Twigg couldn't explain why the broken

crosswalk sign was not reported until three days after Calhoun's accident when a City police officer and evidence technician responded at the scene. He did not know whether a police officer or evidence technician has a duty to report a road defect they observe to the City. Until he was asked at his deposition, Twigg did not even know that Calhoun had claimed the responding police officer told him the City knew about the road defect but didn't fix it. The only value to Twigg's affidavit is that the City repaired the road defect the same day that it received the 311 report, indicating that the repair was not particularly time-consuming or difficult.

¶ 46    Viewing Calhoun's deposition testimony, Officer Vasquez's affidavit and deposition testimony, and Twigg's affidavit and deposition testimony together in the light most favorable to Calhoun, as we must, the City failed to meet its burden to show it lacked notice of, and sufficient time to repair, the road defect that caused Calhoun's accident and injury.

¶ 47    Although a genuine issue of material fact exists regarding notice, the circuit court's grant of summary judgment to the City was proper based on its finding that the road defect was *de minimis* and, therefore, not actionable. The nature of the road defect is not in dispute. The sign base protruded above the roadway surface by one and a half inches at most and had beveled edges.

¶ 48    The only cases cited by the parties and the majority involve pedestrians whose injuries were caused by surface defects. For example, in *Birck v. City of Quincy,* 241 Ill. App. 3d 119, 121, 124 (1993), the court found that a 1 ⅞ inch difference in the level of two concrete sidewalk slabs constituted a defect that was, as matter of law, too minor to be actionable. See also *St. Martin v. First Hospitality Group, Inc*., 2014 IL App (2d) 130505, ¶ 14 ("it is well established that, absent any aggravating factors, a vertical [sidewalk] displacement of less than two inches is *de minimis*"); *Morris v. Ingersoll Cutting Tool Co*., 2013 ILL App (2d) 120760, ¶ 14 (affirming trial court's grant of summary judgment to defendant based on its finding that that the 1 ½–inch road defect in a

15

loading bay that caused a truck driver to fall was *de minimis* and not actionable, reasoning that "[d]efendants' duty of care toward [plaintiff] was not to maintain their premises in perfect condition, but to avoid creating an unreasonable risk of harm").

¶ 49     The pedestrian cases, however, are not controlling because an automobile has four wheels, is larger and heavier than a pedestrian, and travels at a higher rate of speed than a pedestrian, leaving the driver less time to react to and correct for road defects. Because of the inherent stability of four-wheeled vehicles and modern automobile suspension systems, automobile drivers often do not notice many road imperfections and defects. Yet, a sidewalk with the same kind of defect may cause a pedestrian to suffer substantial injury. Thus, a road defect may be considered *de minimis* when the plaintiff is the operator of a motor vehicle even though the same defect on a sidewalk may be actionable when the plaintiff is a pedestrian.

¶ 50     This case, however, is different because it involves a plaintiff operating a motorcycle, which of course is less stable than a four-wheeled vehicle and provides little protection in the event of a collision. The risks of driving a motorcycle are well known. See *Miller v. Dvornik*, 149 Ill. App. 3d 883, 888 (1986) ("In today's society, motorcycles are a common means of transportation for persons who are plaintiff's age and, in our view, any competent 19-year-old person can be expected to know the hazards of riding a motorcycle, including the fact that if a motorcycle is hit from the side by an automobile, either the driver of the motorcycle will be thrown or the motorcycle will topple over. *** There is nothing circumspect about a motorcycle rider's vulnerability to injury in the event of a collision. The risks are patent."). A road defect encountered in an automobile may hardly be noticed but the same defect may cause a motorcycle to become unstable. That is why motorcycle operators must use greater care to avoid injury than automobile drivers, particularly in their line of travel along a lane of a roadway. *Cf. Ford v. Round Barn True Value,*

16

*Inc.*, 377 Ill. App. 3d 1109 1117-18 (2007) (affirming grant of summary judgment to defendant on basis that road defect was open and obvious because plaintiff motorcyclist saw gravel around a pothole when he was 10 feet away and was aware that riding on gravel at slow speed could cause motorcycle to slip).

¶ 51    Nevertheless, I would still find the road defect here *de minimis* as applied to a motorcyclist like Calhoun. As the majority observes, the crosswalk sign itself was missing but its base remained affixed to the road. The sign base was located in the center of the eastbound and westbound lanes of Emerson Street abutting the crosswalk markings painted on the road surface, immediately before where Emerson Street and Hartrey Avenue intersect. The sign base protruded above the roadway surface one and a half inches at most. In addition, the sign base had beveled edges, which would act to soften the impact when motorized vehicles cross over it. Motorists, including motorcyclists, experience roadway imperfections of this size on a daily basis without injury. Maintaining perfectly smooth roadways is preferable, but the cost to impose that burden on government would far outweigh the benefit to the driving public. A defect of the present nature is not substantial enough to be actionable.

¶ 52    I concur with the judgment to affirm the grant of summary judgment to the City because the road defect was *de minimis* and, therefore, not actionable. I dissent from the majority's alternative rationale that the record establishes that the City lacked notice of the road defect. Calhoun presented competent evidence that the City had notice of the road defect and adequate time to repair it. And the City's contrary evidence does not withstand scrutiny. More importantly, the notion that a court may reject a party's testimony because it is "self-serving" has no place in our summary judgment jurisprudence.