DAVID TABER, Plaintiff-Appellant, v. EDITH S. TABER, n/k/a Edith S. Moore, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—91—1317

Opinion filed June 7, 1993.

Sheldon Engel, of Chicago, for appellant.

Linda S. Kagan, of Chicago, for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal in a post-judgment dissolution of marriage case.

Edith Taber and David Taber were married on August 29, 1948. On June 24, 1974, David, then age 51, filed a complaint for divorce against Edith, then age 49. On September 26, 1974, a judgment for divorce was entered. On that date, the parties' three children—Alan, Michael and Jessie—were 22, 20 and 16 years old, respectively.

The judgment incorporated the parties' "oral agreement with respect to their property." The agreement included the following provisions:

> "Both Plaintiff [David] and Defendant [Edith] are employed, Plaintiff at a gross salary of $30,000 per year and Defendant at a gross salary of $22,000 per year;
>
> The residential property at 2000 Lincoln Street, Evanston, is in joint tenancy and shall remain in joint tenancy, but that the Defendant shall reside and be entitled to exclusive possession of said premises as long as she wishes;
>
> That while in such occupancy Defendant shall pay the mortgage, taxes, upkeep and insurance upon the said premises;
>
> At Defendant's option the property may be sold and the net proceeds divided equally between the parties;
>
> The furniture and furnishings in the house at 2000 Lincoln Street shall remain for the use of the Defendant as long as she lives there but at such time as she may remove [sic], then the parties will determine who shall have possession of said such furniture and furnishings as of the time of such removal."

Other property which the parties' agreement addressed included books, photographic equipment, a baby grand piano, vehicles, savings

accounts, and securities. The parties also agreed to waive alimony and that they would equitably divide the educational expenses of the children.

The judgment "Ordered, Adjudged and Decreed" that: Edith shall receive custody of Jessie, with David having full rights of visitation; the question of child support was reserved for further consideration; David shall maintain his life and hospitalization insurance for the benefit of the children; and David would be responsible for extraordinary medical and dental expenses for Jessie. Edith and David, the latter through his attorney, signed the divorce judgment.

Edith married James Moore in December 1975. Edith and James have resided at 2000 Lincoln Street, Evanston, since their marriage.

On December 15, 1989, David filed a "petition for declaratory judgment and for order of sale of marital home or, in the alternative, for order that James Moore be evicted from the premises." The petition sought a declaration that the award of the Evanston home to Edith "was a form of child support," modifiable upon a showing of a substantial change of circumstances. David alleged that Jessie's cessation of use of the Evanston home as of 1981 constituted such a change of circumstances. David asserted that his delay in bringing this action was due to "personal tragedies" and, in any event, did not prejudice Edith. The petition alternatively sought eviction of James Moore from the Evanston home on the ground that the award of "exclusive" possession to Edith prohibited her from living with a second husband.

On April 1, 1991, without holding an evidentiary hearing, the circuit court entered a final written order which denied David's petition in its entirety. The order provided that: "the award of exclusive possession of the Evanston home created a property right (as to which the Court has no jurisdiction to modify) and was not a form of child support"; and "James Moore's occupation of the Evanston home as his residence along with Edith Moore did not terminate Edith Moore's exclusive possession of the Evanston home."

On appeal, David asserts that the circuit court erred in denying his petition without first holding an evidentiary hearing. David asserts that the 1974 divorce judgment is ambiguous and, thus, the court erred in not considering extrinsic evidence to clarify whether the award of possession of the Evanston home to Edith was intended to be an indefeasible property right or a modifiable award of nonmonetary child support or other modifiable subsidy. David further asserts that the circuit court erred by not interpreting the word "exclusive"

to prohibit James Moore from residing in the Evanston home with Edith.

> "The normal rules pertaining to the construction of contracts are applicable to the interpretation of the provisions of a divorce decree. [Citation.] The settlement provisions within the divorce decree should be construed so as to give effect to the intention of the parties. [Citations.] The intent of the parties must be determined from the contract as a whole and not from any one clause standing alone. [Citations.] Further, in construing a contract, meaning and effect must be given to every part, and no part should be rejected as surplusage unless absolutely necessary since it is presumed that each provision was inserted deliberately and for a purpose. [Citations.] The parties' intent must be determined solely from the language of the contract unless the language is ambiguous, in which case extrinsic evidence may be introduced to explain the language. [Citation.] A contract is ambiguous when the language used is reasonably susceptible to more than one meaning. [Citation.] Language is not rendered ambiguous simply because the parties do not agree upon its meaning." *White v. White* (1978), 62 Ill. App. 3d 375, 378-79, 378 N.E.2d 1255.

Applying the foregoing rules of construction to the 1974 divorce judgment, we find the exclusive possession provision to be unambiguous. Further, we conclude that the award of exclusive possession of the Evanston home to Edith constituted a property disposition which cannot be modified (see Ill. Rev. Stat. 1989, ch. 40, par. 510(b)) and not an award of nonmonetary child support or other modifiable subsidy.

First, we must construe the 1974 judgment as a whole. It speaks in terms of incorporating the parties' "oral agreement with respect to their property." Indeed, the first four of five paragraphs of the agreement relate to the Evanston home. The second paragraph contains the exclusive possession provision in question. Following the fifth paragraph, the next five paragraphs address various properties, including books, photographic equipment, automobiles and savings accounts. Only the last two paragraphs of the agreement address matters other than property. The fact that substantially all of the parties' agreement related to the disposition of the parties' marital property undermines David's claim that the exclusive possession provision was other than what it purports to be—a disposition of property.

Second, the parties' situation in life demonstrates that the exclusive possession provision was intended to be a property disposition.

The judgment states that both David and Edith were gainfully employed. Both parties waived alimony. Of their three children, only Jessie was a minor. Jessie, however, was nearing his majority. His needs, therefore, were diminished. The judgment's provisions relative to Jessie reflect this diminished need. Given the parties' life situation, it was reasonable for them to focus on finally disposing of their marital property rather than providing for their children or each other. The judgment and agreement reflect this theme.

Other provisions of the agreement demonstrate that the parties intended their disposition of the marital home to be final. Most importantly, Edith received exclusive possession of the Evanston home "as long as she wishes." The plain meaning of these words connotes finality. Also, under the agreement, Edith was to pay during her possession the mortgage, taxes, insurance and upkeep of the property. The judgment gave her no corresponding allowance for these expenses, and David was to contribute nothing. These provisions similarly connote finality of the award.

Lastly, the judgment does in fact address the subject of child support for Jessie (it reserved the question), alimony (the parties waived it) and other expenses which the parties may incur in completing the raising of their now mature children (*e.g.*, education and extraordinary medical and dental expenses for Jessie). The fact that the judgment addressed these matters undermines David's claim that the exclusive possession provision was some undisclosed form of nonmonetary child support or nonmonetary alimony.

David relies upon *Lamp v. Lamp* (1980), 81 Ill. 2d 364, 410 N.E.2d 31, *In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 479 N.E.2d 1152, and *Barlow v. Barlow* (1978), 56 Ill. App. 3d 629, 372 N.E.2d 422, to support his argument that the exclusive possession provision was other than a property disposition. These cases are distinguishable. In each of the cited cases, the particular circumstances surrounding the award of the marital home persuaded the court to conclude that it was not a property award.

For example, in *Lamp*, the wife received possession of the marital home until she remarried or until the youngest child reached majority. The husband was responsible for mortgage and taxes and the wife paid no rent. At the time of the husband's petition for modification, the youngest child was 12 years old, and all children lived with the defendant. The supreme court concluded that the award of possession was not a property award, but a form of support for the benefit of the minor children. Accordingly, the supreme court affirmed the sale of the house. *Lamp* is clearly distinguishable from the present case.

In *Stanley*, the decree provided that a 25/60 portion of the value of the use of the marital residence was to be allocable to maintenance and a 35/60 portion to child support. Possession was also to terminate upon the wife's remarriage. The award of possession to Edith in the present case is in no way similar to the award in *Stanley*.

In *Barlow*, a 1962 divorce decree gave the wife "use" of the marital home without specifying any time limitation. The wife received custody of the parties' four minor children, and the husband was required to pay $65 per week in child support. Both parties waived alimony. One year later, the wife successfully petitioned for a modification of the divorce decree. The modification required the husband to pay one-half the mortgages and taxes on the marital home.

In 1976, the husband filed a petition to partition the marital home, terminate the wife's use and divide the sale proceeds. The husband asserted that the award of "use" of the home to the wife was to provide a home to the couples' children. Since the youngest child had reached majority, the wife's use of the home no longer existed. The wife responded to the husband's petition that the decree gave her use of the home for life. After admitting extrinsic evidence to clarify the meaning of the award of use of the home to the wife, the court granted the husband's petition. This decision was affirmed on appeal. Again, the facts in this case are clearly distinguishable from these in *Barlow*.

Each case must turn on its own facts. While we agree with David's argument that substance, not form, should control (see *Warren v. Warren* (1980), 88 Ill. App. 3d 543, 410 N.E.2d 915) and that an award of possession of the marital home has, in some cases, been determined to be other than an award of property, the judgment here, both in substance and form, constituted a property disposition with respect to the Evanston home. The judgment, in this regard, is unambiguous. Extrinsic evidence, therefore, was properly excluded. For these reasons, the circuit court properly determined that the award of the Evanston home to Edith unambiguously created a property right and not some form of nonmonetary child support of other modifiable subsidy.

We next address David's alternative argument that James Moore should have been evicted from the house. David's argument is spurious. The word "exclusive" within the judgment manifestly relates to the possession of the home as between David and Edith, not Edith and some third party. Taking David's argument to the extreme, Edith's possession would terminate in the event her own mother lived in the home. David's argument, to be accepted, would require this

court to make a forced construction of the judgment. This we will not do.

David makes other arguments on appeal which the foregoing analysis renders moot. We accordingly do not address these arguments.

For the foregoing reasons, the April 1, 1991, order of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.