ALBERT P. PUTMAN et al., Plaintiffs-Appellants, v. THE VILLAGE OF BENSENVILLE et al., Defendants-Appellees.

Second District   No. 2—02—0722

Opinion filed February 19, 2003.—Rehearing denied March 26, 2003.

198

Paul W. Grauer, of Paul W. Grauer & Associates, of Schaumburg, for appellants.

W. Anthony Andrews and James L. DeAno, both of Norton, Mancini, Weiler & DeAno, of Wheaton, for appellee Village of Bensenville.

William J. Cremer, Brian P. Shaughnessy, Thomas R. Pender, and Nicole E. Kreuzer, all of Cremer, Kopon, Shaughnessy & Spina, of Chicago, for appellee Eagle Concrete Contractors, Inc.

Jon B. Masini and Scott A. Ruksakiati, both of Daar, Fisher, Kanaris & Vanek, P.C., of Chicago, for appellee James J. Benes & Associates, Inc.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiffs, Albert P. Putman and Ardelle J. Putman, instituted an action in the circuit court of Du Page County following a fall that rendered Albert a quadriplegic. Plaintiffs named as defendants, among others, the Village of Bensenville (Bensenville or the Village), Eagle Concrete Contractors, Inc. (Eagle), and James J. Benes & Associates, Inc. (Benes). Eagle was a subcontractor hired on a road improvement project in Bensenville, and Benes was the engineering firm hired by the Village for the project. A number of other defendants settled or were granted summary judgment and are not parties to this appeal. Defendants moved for summary judgment. The trial court granted defendants' motions, and plaintiffs now appeal. For the reasons that follow, we affirm in part, reverse in part, and remand the cause.

## I. BACKGROUND

On November 9, 1995, Albert was to attend a meeting at the Veterans of Foreign Wars (VFW) building in Bensenville. The meeting was to commence at 8 p.m. He arrived about 7:30 and parked in a lot across the street. As he approached the intersection to cross the street, he noted that the pedestrian crosswalk and traffic signals were working, but the overhead lighting at the intersection was not. Albert stated that the intersection was dark and shadowy. Albert pressed the pedestrian signal button and waited until the walk signal came on before crossing the intersection. When he was about halfway across the intersection, the signal changed to "don't walk." Albert related that he increased his pace "a trifle," but "didn't hurry that much." Albert acknowledged that he was familiar with the intersection due to the number of times he had previously traversed it, which he estimated

at approximately 30. Albert stated that the signal appeared to be quicker than usual on the night of the accident. In fact, the signal had been damaged about three weeks earlier, and a temporary controller had been installed. This controller would give a pedestrian the walk signal for between 3 and 8 seconds and then allow an additional 15 seconds to cross the intersection.

On the VFW side of the intersection, Bensenville had installed a ramp to make the sidewalk handicapped accessible. The ramp consisted of a sloped portion of the sidewalk that came down to meet the road. There was a gutter at the base of the ramp. As Albert was leaving the roadway, he tripped on the front edge of the ramp where it adjoined the gutter. He fell forward and struck his head on a concrete parking block. As a result, he was paralyzed from the neck down. The record in this case is voluminous, and additional facts will be discussed as they pertain to the issues raised by plaintiffs.

■ Before proceeding to the merits of this appeal, we note that both Benes and Eagle have filed *motions to strike portions of plaintiffs'* brief. We ordered these motions taken with the case. The whole of Eagle's motion and a portion of Benes's are based on plaintiffs' failure to cite authority in support of some of their arguments, in contravention of Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)). It is well established that points not supported by authority may be deemed waived. *Groenings v. City of St. Charles*, 215 Ill. App. 3d 295, 306 (1991). However, this principle is "an admonition to the parties and not a limitation upon the power of a reviewing court to address issues of law as the case may require." *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 37 (1994). Hence, we deny these motions and will apply the doctrine as we see fit in addressing the merits of this appeal. Benes also requests that a portion of plaintiffs' brief be stricken because it pertains to an order not mentioned in plaintiffs' notice of appeal (see 155 Ill. 2d R. 303(b)(2)). However, plaintiffs have voluntarily withdrawn this issue, rendering that portion of Benes's motion moot.

■ We also note that, except for Benes, all parties at times, and plaintiffs persistently, fail to comply with Supreme Court Rules 6 and 341(d) (145 Ill. 2d R. 6; 188 Ill. 2d R. 341(d)). These rules mandate that "[c]itations of cases must be by title, to the page of the volume where the case begins, *and to the pages upon which the pertinent matter appears* in at least one of the reporters cited." (Emphasis added.) 145 Ill. 2d R. 6. The failure to abide by these rules is also sufficient to result in the waiver of an argument. See *Chicago Title & Trust Co. v.*

*Weiss*, 238 Ill. App. 3d 921, 927-28 (1992). We advise all appellate counsel to pay close attention to these rules in the future.

## II. ANALYSIS

■ The trial court granted summary judgment in favor of all three defendants. As the issues pertaining to the separate defendants are discrete, we will address them separately. Because this cause comes to us following a grant of summary judgment, review is *de novo. Corona v. Malm*, 315 Ill. App. 3d 692, 694 (2000). Summary judgment is appropriate only where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Stewart v. Jones*, 318 Ill. App. 3d 552, 557-58 (2001). The record must be construed liberally in favor of the party opposing the motion. *Largosa v. Ford Motor Co.*, 303 Ill. App. 3d 751, 753 (1999). We will now turn to the merits of this appeal.

### A. Bensenville

■ ■ Among the grounds relied on by the trial court in granting Bensenville's motion for summary judgment was that any defect in the ramp was *de minimis* and thus could not support liability on the Village's behalf. As we find this issue dispositive, we need not address the alternate bases articulated by the trial court in support of its decision. The rule that a village has no duty to repair *de minimis* defects in its sidewalks is well established in this state. See *Gillock v. City of Springfield*, 268 Ill. App. 3d 455, 457 (1994); *Hartung v. Maple Investment & Development Corp.*, 243 Ill. App. 3d 811, 815 (1993); *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 121, 124-25 (1993); *Arvidson v. City of Elmhurst*, 11 Ill. 2d 601, 604 (1957); *Walter v. City of Rockford*, 332 Ill. App. 243, 246-51 (1947). This rule stems largely from the recognition that placing such a duty on a municipality would create an intolerable economic burden. See *Gillock*, 268 Ill. App. 3d at 457-58 ("The economic burden would be too great to require municipalities to repair every slight defect existing in the miles of sidewalk they maintain"); *Birck*, 241 Ill. App. 3d at 123. Quite simply, a municipality does not have a duty to keep a sidewalk in perfect condition at all times. *Hartung*, 243 Ill. App. 3d at 814. Because the existence of a duty is a question of law, it is an issue that properly can be resolved in a motion for summary judgment. *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 154 (1992); see also *Bledsoe v. Dredge*, 288 Ill. App. 3d 1021, 1023 (1997) (holding that the *de minimis* rule renders minor defects in a sidewalk not actionable as a matter of law).

In the instant case, the evidence, viewed in the light most favorable to plaintiffs, shows that there was a one-inch lip between the ramp and the gutter. Plaintiffs' expert, Paul Box, produced a diagram

showing this change in elevation. The upper half of the inch reflected the distance where the ramp sloped downward, and only the lower half was perpendicular to the gutter. Defendants produced testimony indicating that the lip was smaller; however, as this appeal involves a summary judgment, we must accept the testimony of plaintiffs' expert. We also note that Albert estimated the distance from the lowest point in the gutter to the ramp at two to three inches. This measurement is not relevant, as Albert asserts that he tripped on the front edge of the ramp. Moreover, it is not surprising that, to allow for drainage, the lowest point of the gutter was somewhat lower than the ramp.

Thus, for the purpose of resolving this issue, we will assume that a one-inch lip existed at the front edge of the ramp. Numerous cases have held that such defects fall within the *de minimis* rule. See, *e.g.*, *Birch*, 241 Ill. App. 3d at 121 (defect of $1^7/8$ inches); *Warner v. City of Chicago*, 72 Ill. 2d 100, 104 (1978) ("Turning to the facts in the case before us, we believe that the city's evidence, a $1^1/8$-inch-maximum height variation, would indicate that, in view of the surrounding circumstances, no cause of action would lie due to the minimal nature of the defect"); *Walter*, 332 Ill. App. at 246 (one-inch defect). In fact, the Fourth District has noted that, generally, the point at which liability attaches in such cases is when the defect approaches two inches. *Birch*, 241 Ill. App. 3d at 122. The evidence, viewed in plaintiffs' favor, indicates a defect of one inch. Such a defect lies within the ambit of the *de minimis* rule and is not actionable.

Plaintiffs do not seriously attempt to argue that the one-inch defect would not fall within the *de minimis* rule. Instead, they attempt to argue that the rule has no application to the case at bar. To this end, they advance two arguments. First, they argue that the ramp was a special, statutorily mandated handicapped ramp, rather than a portion of the ordinary sidewalk. Second, they contend that certain regulations that state how such ramps should be constructed should control this action and trump the *de minimis* rule. We find both arguments unpersuasive.

■ First, we attach no significance to the fact that Albert tripped on the ramp rather than on some other portion of the sidewalk. Plaintiffs attempt to distinguish the ramp from the balance of the sidewalk by pointing out that the design of such ramps is set forth in detail in certain administrative regulations. See 71 Ill. Adm. Code § 400.31 (1991) (incorporating standard 4.7 of the American National Standards Institute (ANSI)). However, other portions of a sidewalk are also governed by exacting standards. See, *e.g.*, Illinois Department of Transportation, Standard Specifications for Road and Bridge Construction § 424.01 *et seq.* (1997). Thus, the fact that the ramps are

heavily regulated provides no basis for distinguishing them from the rest of the sidewalk.

More fundamentally, adopting the position advocated by plaintiffs would lead to an absurdity. A sidewalk ramp is, obviously, intended to provide access to a sidewalk. Thus, the same individuals who traverse the ramp also use the sidewalk. If we were to exclude ramps from the *de minimis* rule, an individual who tripped on a defect in the ramp would have a cause of action while one who tripped on a defect in the very next slab after leaving the ramp would not. The ramp is, in fact, part of the sidewalk. No reason is apparent to apply a heightened standard of care to ramps when users of the ramp will encounter similar defects, which are nonactionable, on the rest of the sidewalk. Accordingly, we reject plaintiffs' contention that the mere fact that the accident occurred on a ramp makes the *de minimis* rule inapplicable.

■ Plaintiffs also argue that they should be allowed to proceed with this action because the ramp did not comply with the relevant provisions of the Illinois Accessibility Code (Code) (71 Ill. Adm. Code § 400.110 *et seq.* (1991)). Initially, we note that the Code provides that it is to be enforced by the Attorney General and does not expressly create a private cause of action. 71 Ill. Adm. Code § 400.140 (1991). Plaintiffs do not suggest that a private cause of action can be implied under the Code. See, *e.g.*, *Rodgers v. St. Mary's Hospital of Decatur*, 149 Ill. 2d 302, 308 (1992). They do, however, assert that the Code establishes the standard of care to which Bensenville should be held.

■ A statute or regulation may establish the standard of care in certain circumstances. *Powell v. Village of Mt. Zion*, 88 Ill. App. 3d 406, 409 (1980); *Kronenberger v. Husky*, 38 Ill. 2d 376, 377 (1967). This principle is particularly applicable where the statute or regulation is designed for the protection of human life. *Millburn Mutual Insurance Co. of Lake Villa v. Glaze*, 86 Ill. App. 3d 1055, 1064 (1980). However, we need not decide whether the Code establishes the standard of care in the present case because we conclude that, even if it does, it does so subject to the *de minimis* rule.

■ Section 288A of the Restatement (Second) of Torts provides, in pertinent part, "An excused violation of a legislative enactment or an administrative regulation is not negligence." Restatement (Second) of Torts § 288A(1) (1965). The section goes on to enumerate a nonexclusive list of circumstances under which a violation would be excused. Restatement (Second) of Torts § 288A(2) (1965). The comments to section 288A further explain that "[w]here, as in the case of the rules of the highway, the legislation is adopted in a field where the common law has already recognized a number of excuses for conduct which would otherwise be negligent, such excuses may continue to be

recognized when the court adopts the statute as a standard." Restatement (Second) of Torts § 288A, Comment *d*, at 35 (1965). While there are not numerous excuses applicable in cases like the present, the *de minimis* rule has been well recognized in this state for an extended period of time. *Birck*, 241 Ill. App. 3d at 121; *Walter*, 332 Ill. App. at 246; *City of Chicago v. Norton*, 116 Ill. App. 570 (1904). Given that the rule is so well established, we conclude that, even if the regulations upon which plaintiffs rely establish the standard of care, they do not abrogate the *de minimis* rule.

■ Plaintiffs point out that, in addition to the defect in the ramp, overhead lighting at the intersection was not functioning and the pedestrian crossing signal was, as Albert described, "faster" than usual on the night of the accident. Regarding the lighting, there is no duty to illuminate a defect that is not otherwise actionable. *Swett v. Village of Algonquin*, 169 Ill. App. 3d 78, 89 (1988). A contrary rule would require a municipality to install lighting over every nonactionable defect in a sidewalk, substantially undercutting the purpose of the *de minimis* rule.

■ Regarding the crossing signal, Albert acknowledged that it had always been fast, that there was no traffic in the area, and that, after the signal changed, he increased his pace "a trifle" or "very minimally." It has been observed that a defect that is not otherwise actionable may be actionable if the surrounding circumstances warrant. For example, in *Baker v. City of Granite City*, 75 Ill. App. 3d 157, 160 (1979), the court held that, "[w]hile a defect of this magnitude may not be actionable in [a] residential area, a jury could reasonably determine that such a defect or condition located in a busy commercial district should result in a finding of negligence." In a "busy commercial district," it is reasonable to infer that a pedestrian could be sufficiently distracted to overlook an otherwise *de minimis* defect. We do not believe that the quicker walk signal was a distraction of sufficient magnitude to bring this case within the exception to the *de minimis* rule alluded to in *Baker*. Moreover, we question whether the quicker walk signal was causally related to Albert's injury, as plaintiffs point to nothing to suggest that a properly operating signal would allow a pedestrian to clear the intersection completely before it switched back to "don't walk."

■ Two final points need to be addressed. First, plaintiffs allege, without citation to authority, that the defendants were contractually obligated to make the transition between the curb and the gutter flush. They do not explain why plaintiffs, who are not parties to any of the contracts relating to the construction of the ramp, are entitled to benefit from this obligation. This argument is thus waived. *Groenings*,

215 Ill. App. 3d at 306. Plaintiffs also suggest that the contract demonstrates that the Village voluntarily undertook certain responsibilities regarding the sidewalk (see *Kavales v. City of Berwyn*, 305 Ill. App. 3d 536, 545-46 (1999)); however, given the *de minimis* nature of the defect at issue, there is no basis to conclude that it did not fulfill any responsibilities it assumed. They further posit a duty on the part of the Village to supervise the construction of and to maintain the ramp. However, as we have determined that the ramp contained no actionable defect, even if such duties existed, they could not have been breached as a matter of law.

Accordingly, we hold that, in accordance with the *de minimis* rule, Bensenville had no duty to remedy the minor defect in the ramp. We affirm the decision of the trial court granting summary judgment to the Village.

## B. Eagle

Plaintiffs next contend that the trial court erred in granting summary judgment in favor of Eagle. Plaintiffs contend that an issue of fact exists as to whether Eagle constructed the ramp in accordance with applicable plans and specifications. Eagle makes two responses. First, it asserts that there is no evidence in the record to establish that the defect in the ramp existed at the time it completed the ramp. Second, it argues that it, like the Village, is entitled to the benefit of the *de minimis* rule. We disagree with both contentions; thus, we reverse the order of the trial court granting summary judgment to Eagle.

In *Hunt v. Blasius*, 74 Ill. 2d 203, 208-09 (1978), our supreme court held that an independent contractor may be held liable for its work pursuant to traditional negligence principles. See also *Polak v. Person*, 232 Ill. App. 3d 505, 515 (1992). Two rules modify this principle. First, "[a]n independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow." *Hunt*, 74 Ill. 2d at 209. Thus, "[i]f the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications." *Hunt*, 74 Ill. 2d at 209. Second, such reliance is not justified where the plans "are so obviously dangerous that no competent contractor would follow them." *Hunt*, 74 Ill. 2d at 209. Hence, unless the plans in question are obviously dangerous, an independent contractor cannot be held liable for merely following them. In the instant case, plaintiffs do not argue that the plans and specifications for the ramp were obviously dangerous; instead, they contend that Eagle did not follow them.

Eagle contends that no issue of material fact exists as to

whether it complied with the plans. In support of this position, Eagle points to the testimony of several witnesses who inspected the ramp around the time Eagle completed its work. Contrary evidence exists in the record. Robert Tarosky, an engineer retained by plaintiffs as an expert witness, averred that the ramp had a lip in excess of one-quarter of an inch and that this defect violated the applicable standard that applied to the construction of the ramp. Hence, we are presented with a conflict in the evidence, making summary judgment inappropriate.

Eagle counters that Tarosky's testimony has no probative value whatsoever regarding whether Eagle complied with the plans and specifications because Tarosky did not examine the ramp until about nine years after Eagle completed its work. Eagle relies on *Clauson v. Lake Forest Improvement Trust*, 1 Ill. App. 3d 1041 (1971), and the trial court accepted this argument. We find *Clauson* distinguishable. In *Clauson*, the court held that it was error to allow expert testimony regarding the slope of an alley where there was no evidence that the condition of the alley had not changed in the 30 months between the plaintiff's injury and the expert's inspection of the alley. *Clauson*, 1 Ill. App. 3d at 1045. In the instant case, evidence exists that supports an inference that the ramp was in the same condition at the time of Albert's injury and Tarosky's examination. Specifically, Tarosky averred that he examined photographs of the ramp taken shortly after the accident and found it to be in "pristine" condition. More to the point, Tarosky also averred that "[t]here is no evidence of upheaval, tree roots, cracks, sinking, deterioration, or other changes or movements of the concrete ramp and gutter area where plaintiff tripped. It is in substantially the same condition as when it was constructed." Thus, the evidence lacking in *Clauson* is present here.

Eagle also contends that the *de minimis* rule, discussed in the previous section, applies to it as well as the Village. We disagree. As noted above, the *de minimis* rule finds its basis in the reality that the economic burden would be too great if municipalities were required to maintain their sidewalks in perfect condition. See *Gillock*, 268 Ill. App. 3d at 457-58 ("The economic burden would be too great to require municipalities to repair every slight defect existing in the miles of sidewalk they maintain"). A finding of liability under the facts of the present case would subject Eagle to no such burden. Eagle is not a municipality and does not maintain the sidewalks of Bensenville on an ongoing basis. If Eagle complied with the plans and specifications for the ramp, no further duty would exist on Eagle's behalf. *Hunt*, 74 Ill. 2d at 209. There is a significant difference between building a sidewalk in the first place and maintaining it ever after. We decline to equate

Eagle's duty to build the sidewalk with that of a municipality to maintain one. Accordingly, we hold that Eagle is not entitled to the benefit of the *de minimis* rule.

Therefore, we reverse the decision of the circuit court granting Eagle's motion for summary judgment.

## C. Benes

Regarding Benes, the trial court granted summary judgment on the basis of the following provision in the contract under which Benes agreed to provide inspection services for the project:

> "Notwithstanding anything to the contrary which may be contained in this Agreement or any other material incorporated herein by reference, or in any agreement between PUBLIC AGENCY and any other party concerning this project, the ENGINEER shall not have control or be in·charge of and shall not be responsible for the means, methods, techniques, sequences or procedures or construction *** nor shall ENGINEER be responsible for the acts or omissions of PUBLIC AGENCY provided that the ENGINEER has properly executed his duties. ENGINEER shall not be responsible for the failure of the PUBLIC AGENCY, any architect, engineer, consultant, contractor or subcontractor to carry out their respective responsibilities in accordance with the project documents or any other agreement concerning the project."

The trial court found that the duty of Benes regarding the project was set forth in the contract, and, thus, the above-cited provision limited Benes's liability.

In their opening brief, plaintiffs assert that Benes owed them a duty, pursuant to the contract, to supervise and inspect the project. Plaintiffs provide no citations to authority whatsoever in this argument and, in particular, fail to cite authority regarding why they are entitled to benefit from Benes's contractual obligation. Therefore, this argument is waived. *Groenings*, 215 Ill. App. 3d at 306. Moreover, even if we were not to deem it waived, we would find it unpersuasive. Parenthetically, we note that plaintiffs do not address whether Benes could disclaim liability for its own negligence (see, *e.g.*, *First Financial Insurance Co. v. Purolator Security, Inc.*, 69 Ill. App. 3d 413, 417-18 (1979)); rather, they limit their argument to whether Benes has effectively done so. We will similarly limit our discussion of this issue.

It is true that a defendant may be charged with negligence for failing to perform an act required by a contract. *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 134 (1986). The question of whether a duty exists in such cases is determined by the terms of the contract, and the duty, if any, will not extend beyond that described in the contract. *Perkaus*, 140 Ill. App. 3d at 134. Even

though such actions lie in tort, the scope of the duty is defined by the contract. *Ferentchak v. Village of Frankfort*, 105 Ill. 2d 474, 482 (1985); *Bolsmo v. Mark V Roofing Co.*, 190 Ill. App. 3d 334, 337 (1989). In the instant case, the contract upon which plaintiffs seek to base a duty clearly limits Benes's liability for the failure of a "subcontractor to carry out their respective responsibilities in accordance with the project documents or any other agreement concerning the project."

Plaintiffs attempt to avoid the effect of this disclaimer by distinguishing between the acts of Benes and those of Eagle. Plaintiffs assert that their action against Benes is not based on Eagle's failure to comply with the plans for the ramp. Instead, they claim that their action is based on Benes's own failure to properly inspect the ramp. We find this argument completely unpersuasive.

In interpreting a contract, it is axiomatic that the primary goal is to give effect to the intent of the parties. *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31, 34 (1993). Moreover, meaning and effect must be given to each portion of a contract if possible, for the parties presumably intended each portion to serve some purpose. *Taber v. Taber*, 248 Ill. App. 3d 435, 438 (1993). Limiting the disclaimer in the manner suggested by the plaintiffs would effectively write it out of the contract. Virtually every error in construction by a subcontractor could be recast and advanced against Benes as a failure to supervise or inspect the project. We cannot find that the parties intended such a result. Accordingly, we hold that the disclaimer set forth above is effective to relieve Benes of liability on the present issue. The trial court properly granted summary judgment in favor of Benes.

## III. CONCLUSION

In light of the foregoing, we affirm the decision of the circuit court of Du Page County granting summary judgment to Bensenville and Benes. We reverse the grant of summary judgment to Eagle and remand this portion of the cause for further proceedings.

Affirmed in part and reversed in part; cause remanded.

BYRNE and CALLUM, JJ., concur.