JUSTICE BURKE delivered the judgment of the court, with opinion.
¶ 1 Plaintiff, Hollace Bartkowiak, brought a negligence action against defendant, the City of Aurora, for injuries that she alleged were caused by a depression located in an asphalt parking lot of the Route 59 Metra train station. The jury rendered a verdict in favor of plaintiff but answered yes to a special interrogatory that asked if the depression had "a vertical difference of 1.5 inches or less." The trial court entered judgment for defendant, finding that the special interrogatory was inconsistent with the general verdict. In its denial of plaintiff's motion to reconsider, the court determined that the special interrogatory resolved the factual question of whether the depression was de minimis and that, because it was de minimis and there were no aggravating factors that could render it actionable, defendant, as a matter of law, owed no duty to guard against hazards created by the depression. Plaintiff contends that the special interrogatory should not have been given, as it was not determinative of an ultimate fact, and that the answer was not irreconcilable with the general verdict. Both issues turn on plaintiff's argument that, even if the depth of the depression was 1.5 inches or less, aggravating factors presented a question *844 of fact as to whether it posed an unreasonable risk. We agree and thus we reverse the trial court's judgment and remand the cause with directions to reinstate the verdict.
¶ 2 I. FACTS
¶ 3 At approximately 5:20 p.m. on December 6, 2011, plaintiff was walking to her parked car in the parking lot of the Route 59 Metra train station, which was owned, managed, controlled, and maintained by defendant, when plaintiff fell. She had caught her toe in a depression located in a pavement seam in a driving aisle as she crossed the aisle to get to her car. Plaintiff suffered a fractured humerus and underwent four surgeries, including a total reverse shoulder replacement, followed by multiple courses of physical therapy.
¶ 4 Plaintiff sued defendant for the injuries she sustained as a result of the fall. She alleged that defendant failed to maintain the asphalt surface of the parking lot in a reasonably safe condition. She also contended that defendant failed to provide adequate artificial lighting in the parking lot so that pedestrians could see potential defects that existed therein.
¶ 5 Defendant denied the material allegations and raised the affirmative defenses of contributory negligence and immunity under section 3-102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) ( 745 ILCS 10/3-102 (West 2010) ).
¶ 6 Following discovery, defendant filed a motion for summary judgment under section 3-102 of the Tort Immunity Act. Defendant argued that plaintiff failed to establish that defendant had actual or constructive notice of the depression in which she tripped. Defendant also argued that the depression was de minimis . Plaintiff responded that the de minimis rule was inapplicable because she testified during her deposition that she believed that the depression was four inches deep. Plaintiff reiterated her allegation that the parking lot's artificial lighting was insufficient to allow her to spot the depression and avoid her accident. She further argued that at the time of the accident her attention was diverted by pedestrian and vehicular traffic in the parking lot such that the distraction exception to the open-and-obvious doctrine applied.
¶ 7 The trial court denied the motion, finding that a question of material fact existed as to whether the depression was de minimis , based upon plaintiff's deposition testimony that the depression was four inches deep. The court also rejected defendant's open-and-obvious defense, finding a material factual dispute based on plaintiff's deposition testimony regarding the purported insufficiency of the artificial lighting in defendant's parking lot.
¶ 8 After discovery of expert witnesses, defendant filed a motion to reconsider the order denying summary judgment. Defendant noted that plaintiff's and defendant's experts agreed that the lighting in the parking lot was sufficient when the accident occurred and that the depression was de minimis .
¶ 9 Plaintiff maintained that summary judgment was not warranted, due to conflicting testimony about both the depth of the depression and the sufficiency of the lighting. Plaintiff argued that her expert's testimony about the depth of the depression and the sufficiency of the lighting did not defeat her contrary attestations that the depression had a vertical depth of four inches and that the parking lot was inadequately illuminated. Notwithstanding her expert's opinion that the depression appeared shallow, plaintiff noted that he also *845 had opined that the depression constituted an unreasonably dangerous condition.
¶ 10 Plaintiff further argued that, even accepting her expert's testimony that the depression appeared to be 1.5 inches deep, aggravating factors rendered the de minimis rule inapplicable. Plaintiff noted the extremely high volume of pedestrians and that defendant knew about the deteriorated condition of the pavement seam, having previously repaired other openings, cracks, and depressions along the seam.
¶ 11 The trial court granted in part and denied in part the motion to reconsider. The court found that the sufficiency of lighting in a commercial or public setting was a subject requiring expert testimony. Thus, based upon the expert testimony, the court found that no genuine issue of material fact existed as to the adequacy of the lighting in the parking lot and it awarded defendant summary judgment on that issue. As to the depression, defendant argued that it was either de minimis or open and obvious and therefore not actionable. The court found that plaintiff's estimation of the depth of the depression as four inches created a question of fact "as to whether the [depression was] de minimis ." "Similarly, as there is a disagreement as to the physical nature of the condition, summary judgment cannot be entered on the open and obvious issue either."[1]
¶ 12 Thereafter, the trial commenced and the following evidence was presented. The parking lot had approximately 1600 parking spaces and would become congested with people during the evening rush hour. Plaintiff had been using the train to commute to work and had been parking in the lot for more than two years. The lot had only two vehicle exits, which created a bottleneck during the rush hour. Some of the commuters exiting the trains during the rush hour frequently ran to their cars so that they could exit the parking lot quickly.
¶ 13 Defendant had employees who worked at the Route 59 train station, and their duties included inspecting the parking lot for depressions and filling them in with a cold patch compound as needed. The area where plaintiff fell was inspected daily by defendant's employees.
¶ 14 The parking lot included a long line of patchwork down the length of the driving aisle where plaintiff fell. This line of patchwork had existed for years prior to plaintiff's accident and was one of the areas that defendant's employees checked daily.
¶ 15 On the day of the accident, plaintiff's train arrived at the station around 5:20 p.m., during the evening rush hour. It was dark outside and the pavement was dry. The temperature was around 40 degrees, and it was not snowing or raining. Plaintiff exited the train and walked down two flights of stairs separated by a landing and entered an underground pedestrian tunnel to access the south lot where her car was parked. Plaintiff took the most direct route to her car, walking between *846 parked cars as opposed to walking on the sidewalk. Plaintiff walked at a normal pace. Plaintiff testified that the parking lot was a "total madhouse" at the time of the accident. People were running to their cars in an effort to exit the parking lot quickly and avoid waiting in long lines. Because of this, plaintiff had to pay attention to everything that was going on around her.
¶ 16 As plaintiff approached the driving aisle where she fell, plaintiff had to wait for a car to pass and then she had to make sure that there were no other commuters who would run into her. She was standing between parked cars, waiting to cross the driving aisle, which was a two-lane aisle. She had to walk the full width of the driving aisle to get to her car. As she began to walk across the driving aisle, looking forward to see if there was anything that she might run into, the entire front end of her right foot fell into a hole in the patchwork seam. Her body stopped dead and she fell forward. Plaintiff put her arms out in front of her, and her left arm collapsed as her elbow hit the pavement. Plaintiff called the depression a "hole" and testified that her foot got "stuck." Speaking in terms of the specifics of the fall, her counsel asked: "You said your toe got caught?" Plaintiff replied: "My whole toe went in it and it literally stopped me dead." Plaintiff remained on the ground until an ambulance arrived. As she was on the ground, plaintiff canvassed the area and saw the depression.
¶ 17 Several photographs of the parking lot were introduced into evidence. One depicted a long black line of patchwork that ran down the driving aisle where plaintiff fell. A close-up photograph showed the depression, which plaintiff testified "roughly" appeared to be in the same condition as it was when she fell. Plaintiff estimated that the depth of the depression was approximately four inches, but she admitted that she never took any measurements of it.
¶ 18 Defendant's employees assigned to inspect the parking lot admitted that, if they came across a depression like the one depicted in the close-up photograph, it would be patched or otherwise repaired. George Silva, defendant's morning foreman at the parking lot, testified that, if he encountered the depression depicted in that photograph, he would apply the cold patch compound to it. Silva explained that he would do so for safety reasons, to prevent people from getting their feet caught in the depression and injuring themselves. George Wells, defendant's evening foreman at the parking lot, testified that the depression shown was a potential tripping hazard and that he would apply cold patch to it. Ben Moon, defendant's labor supervisor, testified that he periodically inspected the parking lot, looking for depressions, holes, and other tripping hazards. He stated that the depression shown needed cold patch or tar sealant.
¶ 19 Plaintiff's expert witness, John Van Ostrand, and defendant's expert witness, Paul Dorothy, testified that the depression depicted was at least 1.5 inches deep.
¶ 20 During the jury-instruction conference, defendant tendered the following special interrogatory:
"Did the condition that Plaintiff claims to have caused her injuries have a vertical difference of 1.5 inches or less?"
¶ 21 Plaintiff's counsel objected that this special interrogatory did not test the general verdict. In particular, counsel noted the aggravating circumstances that plaintiff's accident happened in an extremely high-volume pedestrian area where commuters were known to dart to their cars. Counsel also noted that defendant's employees responsible for maintaining the lot testified at trial that the depression, as it appeared in plaintiff's photograph, was a *847 tripping hazard. Thus, counsel argued that the jury could determine that the depression was 1.5 inches or less deep, but still find that it was an unreasonably dangerous condition for which defendant should be held liable. The trial court disagreed and allowed the special interrogatory, noting:
"The case law on this has been around for 25, 30 years, and the cases dealing with this we've discussed on the motions for summary judgment, the [ Birck v. City of Quincy , 241 Ill. App. 3d 119, 181 Ill.Dec. 669, 608 N.E.2d 920 (1993) ], case and the others, so I'm well aware of the case law.
What the case law indicates is that certain heights-it's not that * * * that defect doesn't present a tripping hazard, it's that it's not actionable, and those are two different things. And it's not actionable because what they've decided is that in Illinois, because of the weather we have, it is not reasonable to place a duty on a municipality or a property owner to protect against differences in heights of less than certain heights. Most of the case law comes down under two inches.
In this particular case, what I had indicated to you based upon all the testimony that was presented at summary judgment, which is similar, or actually the same as the testimony that's been adduced here at trial, I indicated the only reason I didn't grant summary judgment was because [plaintiff] estimated the difference of height at four inches, which would take it well beyond the realm of the De Minimis Rule."
¶ 22 The jury returned a verdict in plaintiff's favor in the amount of $920,000, reduced by 50% to $460,000 for plaintiff's contributory negligence. The jury also answered yes to the special interrogatory. The trial court found this response to be inconsistent with the general verdict in plaintiff's favor, determined that the depression was de minimis and not actionable as a matter of law, and entered judgment in defendant's favor. Plaintiff filed a posttrial motion seeking to reinstate the general verdict. The trial court issued a memorandum of opinion, explaining as follows:
"The law of this case was determined at the time of Defendant's Motion for Summary Judgment when this Court ruled that those additional factors did not exist and that the only reason Summary Judgment was not granted was a factual dispute as to the size of the alleged defect. Specifically Plaintiff estimated the depth of the defect as being greater than four inches while experts on both sides estimated the depth at around 1.5 inches or less.
The other factors which could render an otherwise slight defect actionable were not found here. Plaintiff testified she was walking between parked cars and then crossing a driving lane taking a direct route to her car when she encountered the defect. She was clearly not walking on a crosswalk or path designated by the landowner. But for the factual dispute as to the size of the alleged defect, no duty would exist.
There is no standard jury instruction or IPI definition of de minimis . The reason is simple. It involves a duty question to be resolved by the court. Consequently the use of the special interrogatory resolved the factual question (the province of the jury) and thereby allowed the court to determine the duty question which ultimately tested the jury's verdict. This was a proper way to resolve the fact question, and once resolved, to allow the court to find that no duty existed. Without the jury's determination of the fact question, the duty question could never be resolved. Consequently *848 Plaintiff's motion is denied." (Emphasis in original.)
¶ 23 Plaintiff timely appeals.
¶ 24 II. ANALYSIS
¶ 25 Plaintiff argues on appeal that the trial court erred in giving the special interrogatory. "A special interrogatory tests the general verdict against the jury's determination as to one or more specific issues of ultimate fact." Simmons v. Garces , 198 Ill. 2d 541, 555, 261 Ill.Dec. 471, 763 N.E.2d 720 (2002). It is proper only if (1) it relates to an ultimate issue of fact upon which the rights of the parties depend, and (2) an answer thereto is inconsistent with some general verdict that might be returned. Id. A trial court's decision on whether to give a special interrogatory is a question of law, which this court reviews de novo . 735 ILCS 5/2-1108 (West 2016) ; see also Garcia v. Seneca Nursing Home , 2011 IL App (1st) 103085, ¶ 35, 353 Ill.Dec. 877, 956 N.E.2d 1005.
¶ 26 Again, defendant asked the trial court to give the following special interrogatory: "Did the condition that Plaintiff claims to have caused her injuries have a vertical difference of 1.5 inches or less?" Defendant claimed at trial and claims on appeal that its duty of care does not extend to repairing a de minimis defect.
¶ 27 Under the de minimis rule, "[i]f a defect is such that a reasonably prudent person would not anticipate some danger to persons walking upon it, it is considered de minimis and is not actionable." Morris v. Ingersoll Cutting Tool Co. , 2013 IL App (2d) 120760, ¶ 12, 376 Ill.Dec. 712, 1 N.E.3d 45. As this court has explained, the de minimis rule originated in cases involving municipalities, "where it was noted that '[m]unicipalities do not have a duty to keep all sidewalks in perfect condition at all times.' " St. Martin v. First Hospitality Group, Inc. , 2014 IL App (2d) 130505, ¶ 13, 381 Ill.Dec. 102, 9 N.E.3d 1221 (quoting Gillock v. City of Springfield , 268 Ill. App. 3d 455, 457, 206 Ill.Dec. 63, 644 N.E.2d 831 (1994) ). "Thus, although a municipality has a duty to keep its property in a reasonably safe condition, it has no duty to repair de minimis defects in its sidewalks." St. Martin , 2014 IL App (2d) 130505, ¶ 13, 381 Ill.Dec. 102, 9 N.E.3d 1221. "This rule stems largely from the recognition that placing such a duty on a municipality would create an intolerable economic burden." Putman v. Village of Bensenville , 337 Ill. App. 3d 197, 202, 271 Ill.Dec. 945, 786 N.E.2d 203 (2003).
¶ 28 "While courts are in marked disagreements as to when the sidewalk irregularity or defect is so slight that the question is one of law, and where it is one of fact for the jury, nevertheless, the decisions recognize that no mathematical standard can be adopted in fixing the line of demarcation, and that each case must be determined upon its own particular facts and circumstances." Arvidson v. City of Elmhurst , 11 Ill. 2d 601, 604, 145 N.E.2d 105 (1957). Illinois courts have found, however, that "liability generally attaches for sidewalk defects approaching two inches in height." Morris , 2013 IL App (2d) 120760, ¶ 13, 376 Ill.Dec. 712, 1 N.E.3d 45 (citing Birck , 241 Ill. App. 3d at 121, 181 Ill.Dec. 669, 608 N.E.2d 920 ). "The de minimis rule generally precludes negligence claims on lesser defects, absent aggravating circumstances ." (Emphasis added.) Morris , 2013 IL App (2d) 120760, ¶ 13, 376 Ill.Dec. 712, 1 N.E.3d 45.[2]
*849 ¶ 29 As an initial matter, defendant asserts that plaintiff forfeited her argument. Specifically, defendant notes that plaintiff suggests that, "[i]f the City of Aurora desired a special interrogatory that addressed the de minimis rule, it could have asked the jury if the defect was so minimal that no reasonable person would foresee that it created a danger." Because plaintiff made no such suggestion to the trial court during the jury-instruction conference, defendant concludes that she forfeited any contention of error regarding the special interrogatory. We disagree. Plaintiff expressly objected to defendant's special interrogatory at the jury-instruction conference. She renewed her objection in her posttrial motion. This was sufficient to preserve her argument that the interrogatory was improper. See Lancaster v. Jeffrey Galion, Inc. , 77 Ill. App. 3d 819, 822, 33 Ill.Dec. 259, 396 N.E.2d 648 (1979). Plaintiff presents this alternative language merely to show what might be a proper special interrogatory on the de minimis rule. She does not argue that it should have been given.
¶ 30 Plaintiff presents two contentions in support of her argument that defendant's special interrogatory should not have been given to the jury. She contends that the special interrogatory was not determinative of an ultimate issue of fact upon which the rights of the parties depended. Plaintiff also contends that the answer to the special interrogatory was not inconsistent with the general verdict. These issues turn on plaintiff's argument that, regardless of the depth of the depression, aggravating factors made the depression an unreasonable risk.
¶ 31 Defendant responds that the special interrogatory was determinative of an ultimate question and that the answer to the special interrogatory was inconsistent with the general verdict, because the trial court properly had ruled on summary judgment that no aggravating factors existed. As a result, defendant asserts, the only factual issue for the jury to decide was the depth of the depression. In fact, however, the trial court granted summary judgment in favor of defendant only on the issue of the sufficiency of the lighting. Had the trial court granted defendant summary judgment on aggravating circumstances, plaintiff's testimony regarding those circumstances would have been irrelevant. Defendant neither filed a motion in limine to bar such testimony nor objected to it at trial.
¶ 32 We find the recent case of Barrett v. FA Group, LLC , 2017 IL App (1st) 170168, 418 Ill.Dec. 379, 90 N.E.3d 537, instructive. In that case, the plaintiff tripped and fell after she stepped in a pothole in an asphalt parking lot. Id. ¶ 12. The trial court granted summary judgment, basing its decision on the fact that the vertical depth of the hole was less than two inches and on the conclusion that the plaintiff had failed to show the presence of aggravating factors sufficient to overcome the application of the "de minimis doctrine." Id. ¶ 22. The First District Appellate Court reversed, finding that it was the role of the jury to decide whether the defect was actionable because of the existence of aggravating factors.
¶ 33 The appellate court first noted the importance of the plaintiff's allegations as *850 to the actual cause of her fall. The plaintiff did not argue that the depth of the pothole caused her to trip and fall, "despite defendants' focus on the issue of the depth of the pothole." Id. ¶ 33. Rather, the plaintiff maintained that "she stepped in the pothole and her shoe became stuck in either broken pavement or broken asphalt within the pothole, which caused her to jolt forward and fall." Id. The court found the case dissimilar to the sidewalk cases in which the de minimis rule had been applied, which almost uniformly involved the plaintiff tripping as a result of a height deviation between sidewalk slabs and thus were of limited usefulness to cases involving potholes. Id.
¶ 34 Additionally, the court found the surrounding circumstances to be relevant to the determination of whether the defect was de minimis , including that: (1) the injury occurred at night in a dimly lit area, (2) although the depth of the pothole was between half an inch and two inches, the hole contained broken pieces of asphalt such that a shoe could become lodged inside, (3) the pothole as depicted in the photographs was not small, appearing to be up to several feet long and wide, and (4) the pothole was located in an area where there were no designated parking spaces, making it more likely for a pedestrian to encounter it, "especially when walking across a crowded parking lot." Id. ¶ 35.
¶ 35 The court held that, under the de minimis rule, a jury question on the issue of negligence is presented only when the defect is such that a reasonably prudent person should anticipate some danger to persons walking upon it. Id. ¶ 37 (citing Arvidson , 11 Ill. 2d at 605, 145 N.E.2d 105 ). Under the circumstances presented and taking the facts in the light most favorable to the plaintiff as the nonmovant, the court could not say that the defect was de minimis as a matter of law. Id.
¶ 36 Here, as in Barrett , the aggravating circumstances presented on the motion for summary judgment and at trial presented a question of fact on the issue of negligence. The adequacy of the lighting was not at issue, but, as in Barrett , the size of the defect was not insubstantial,[3] it was located in an area where it was likely to be encountered by pedestrians, and it contained broken asphalt and was deep enough for plaintiff's foot to become stuck, causing her to stop dead and fall forward. Furthermore, there was evidence of the parking lot's bottleneck design, the "madhouse" conditions of the congested parking lot when plaintiff was injured, and defendant's employees' testimony that the defect needed to be repaired because it was a tripping hazard.
¶ 37 We are further unpersuaded by the trial court's suggestion that plaintiff should have used the "crosswalk or path designated by the landowner" rather than walking between parked cars and then crossing a driving aisle to take a direct route to her car. As the Barrett court stated: "Here, we cannot say, as a matter of law, that it was not reasonably foreseeable that an individual parking his or her vehicle in the parking lot would choose to walk across the lot instead of using an out-of-the way sidewalk." Id. ¶ 36.
¶ 38 We determine that the trial court erred in holding that there were no aggravating factors that would render the depression, an otherwise de minimis defect, actionable. There were issues of material fact that precluded such a determination as a matter of law. Therefore, the trial court erred in giving the special interrogatory, as it did not relate to an ultimate *851 issue of fact upon which the rights of the parties depended. Further, the answer to the special interrogatory was not inconsistent with the general verdict. See Simmons , 198 Ill. 2d at 555, 261 Ill.Dec. 471, 763 N.E.2d 720. Accordingly, we reverse the judgment of the trial court and remand the cause with directions to reinstate the verdict.
¶ 39 III. CONCLUSION
¶ 40 For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded with directions.
¶ 41 Reversed and remanded with directions.
Justices McLaren and Zenoff concurred in the judgment and opinion.

We observe that, when discussing the trial court's summary-judgment ruling, defendant states that "the trial court rejected Plaintiff's contention that aggravating factors existed to render the [de minimis ] rule inapplicable." At the summary-judgment stage, the trial court simply held that there was evidence creating a question of fact regarding the depth of the depression. The only citation to the record that defendant provides to support its statement is the posttrial order in which the trial court, in justifying its entry of judgment on the special interrogatory, stated that it previously "ruled that those additional factors did not exist and that the only reason Summary Judgment was not granted was a factual dispute as to the size of the alleged defect." There is no evidence in the record showing that the trial court came to this conclusion at the summary-judgment stage.

A determination of whether a duty exists is a question of law for the court to decide. Marshall v. Burger King Corp. , 222 Ill. 2d 422, 430, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006). Clearly, defendant had the duty to maintain its property in a reasonably safe condition for plaintiff, based upon the special relationship between a landowner and an invitee upon the land. See Simpkins v. CSX Transportation, Inc. , 2012 IL 110662, ¶ 20, 358 Ill.Dec. 613, 965 N.E.2d 1092. The nature of the defect and the existence and effect of aggravating circumstances would necessarily turn on the facts of a given case. Thus, a de minimis analysis in the context of whether a duty exists might be another instance where the concepts of duty and breach are conflated. See Stearns v. Ridge Ambulance Service, Inc. , 2015 IL App (2d) 140908, ¶ 13, 392 Ill.Dec. 457, 32 N.E.3d 765.

Defendant contends in a footnote that plaintiff never argued at trial that the width and length of the defect were aggravating factors and thus has forfeited raising this on appeal. The record shows to the contrary. Accordingly, we reject defendant's argument.